Keating, J.
Edward Fleming was removed from the scene of an accident by ambulance in a state of unconsciousness and taken to a nearby hospital. Only minutes before he had been a passenger in a vehicle owned by an old friend, Theodore Chodorowski, and driven with Ms consent by Domenic Ponziani. Chodorowski’s car collided with a milk truck owned by Rainbow Dairies and operated by Chester Suzel.
Fleming’s injuries were extensive. The hospital admission records indicate that he was suffering from multiple lacerations of the face and scalp, possible cerebral concussion and fracture of the skull and was in a comatose condition upon arrival. On the day following his admittance the records indicate he had a grand mal seizure.
On November 14,1960, a Monday, two days after the accident, Fleming’s good friend Chodorowski came to visit him in the hospital. Chodorowski’s arms were not burdened with gifts or flowers, but rather he was armed with a general .release. The form had been obtained the day before from his attorney, whose advice prompted the visit to his ill friend. The blanks in the unexecuted copy of the general release had been completed in counsel’s office, and Chodorowski carried the paper to the hospital to get the last blank filled—Fleming’s signature.
Fleming was propped up in bed when Chodorowski arrived. His left hand was suspended in a splint and his forehead bandaged. Chodorowski, upon entering the patient’s room, did not engage in even the normal amount of perfunctory social amenities, but rather immediately asked Fleming to sign the release. No discussion was undertaken concerning the implications of Fleming’s signing the release. Also, the parties did not discuss the terms or consideration embodied in the release. It is clear that neither party, at the time the release was executed, was aware of the extent of Fleming’s injuries.
The release was signed in the presence of a nun who also notarized the instrument. After the formal execution of the release Chodorowski placed a dollar bill before Fleming and departed. The length of the visit was less than five minutes. The day after the release was signed, hospital officials discovered *108 that Fleming’s injuries were more extensive than originally diagnosed. In addition to his other injuries, he had a fractured scapula. Fleming was released from the hospital on November 28, 16 days after admittance, and permitted to finish his convalescence at home.
On December 30, 1961 Fleming instituted an action by the service of a summons and complaint on Chodorowski and Ponziani to recover for injuries arising out of the negligent operation of the car driven by Ponziani and owned by Chodorowski. Previously, on November 25., I9601, he had instituted an action against Rainbow Dairies and Suzel for their negligence. Defendants Chodorowski and Ponziani, in answer to Fleming’s complaint, asserted, as an affirmative defense, the general release which Fleming signed while he was a patient in the hospital. The validity of the release was directed to be tried separately from the issue of negligence.
A motion for a directed verdict at the close of all the evidence was made upon the claim that no issue as to the validity of the release had been raised. The court denied the motion. The court held that questions of fact were raised on which the jury was required to pass.
The court charged the jury that “ The burden of proof was on the defendant in this case to prove that there was an executed general release. Now, that burden has been met by the defendant by putting in evidence the signed release that was executed by the plaintiff, Mr. Fleming, and signed by him as he conceded that he signed it. At that point it is the burden of the plaintiff to prove, by a fair preponderance, what we call a fair preponderance of the credible evidence that although the release was signed and it was executed, that it was executed either under an unawareness of what he was doing, a mistake, a mutual, mistake that he and his friend or the defendant didn’t realize the import of what their release suggested and what it intended to do.” Fleming’s lawyer excepted to this part of the charge. In addition he requested that the jury be charged that the release was obtained in violation of section 270-b of the former Penal Law.
The jury returned a verdict in favor of the defendants, which the Trial Judge set aside. In addition, he struck the affirmative *109 defense of release from the defendants’ answers and directed the action be set down for trial on the issue of negligence.
The Appellate Division (Second Department) reversed on the law and ordered a new trial solely because of the Judge’s failure to instruct the jury properly. While the jury could have found that the plaintiff had falsely denied recollection of his execution of the release, a new trial was ordered both because the jury was instructed incorrectly on who had the burden of proving the validity of the release and because the jury should have been instructed that it was procured in violation of section 270-b of the former Penal Law (now Judiciary Law, § 480). Defendants appeal from the order of the Appellate Division by stipulating for judgment absolute.
The issues raised by the appeal are (1) whether a person who has received a release from a patient in a hospital, within 15 days of the injury, has the burden of persuading the jury as to the plaintiff’s knowledge and understanding at the time of the release, and (2) whether it is proper for the court to instruct the jury that the procurement of the release was in violation of section 270-b of the former Penal Law.*
In Bloodgood v. Lynch (293 N. Y. 308, 311) we stated that “ [T]he purpose of section 270-b is to prevent the negotiating of settlements or the obtaining of general releases or statements with reference to personal injuries sustained by a patient in connection with a personal injury action or claim until a decent interval has elapsed.” It is not an unwarranted construction of the statute to place the burden of proof on the party who seeks to use the release defensively. On the contrary, if a defendant seeks to deprive a patient of an opportunity to *110 make a reasoned judgment, it is perfectly fair to require the defendant to prove all the elements of a duly executed contract including competency of the parties and meeting of the minds if a release is executed in a hospital within the first 15 days of the patient’s being admitted. It is a valid assumption that a patient in a hospital, without assistance of friends and soon after an accident, even if conscious, would not fully understand the significance of signing a general release.
As the Appellate Division correctly stated, it was the Legislature’s view that an injured person in a hospital is neither in the'physical nor emotional condition to give proper consideration to what course of action to take and this is especially so when he is being importuned for a general release.
The determination of the Appellate Division finds strong support in the well-established view in New York that the party seeking to prove the validity of a release has the burden of proof on this issue. This burden extends to proving lack of duress, illegality and fraud.
In Murray v. Narwood (192 N. Y. 172), a case involving a written contract to compromise a suit, the defendant asserted, as a defense to an action brought on the contract, that the contract had been obtained by conspiracy and duress. With respect to the-burden of proof involved in the case we stated: “ The defenses of conspiracy and duress were in reality and in substance negative, in effect alleging that there was no legal contract and that it never had a valid inception. These defenses pertain to the facts which took place at the time the contract was alleged to have been executed, and become the res gestae, upon which the validity of the contract depends. This class of defenses is distinguishable from those affirmative defenses which are based upon facts occurring subsequently to the execution of a contract, in which it may be changed, altered, modified or settled. It, therefore, follows that the plaintiff, in undertaking to prove the contract upon which his action is based, had cast upon him the burden of establishing, by a preponderance of evidence, that it was a good and valid contract having a legal inception which was binding upon the defendant, and that.burden of proof continued with him throughout the case.” (Id., p. 177.) This reasoning was followed in Brulatour, Inc. v. Garsson (229 App. Div. 466); Genesee Val. Nat. Bank *111 & Trust Co. v. Bolton (248 App. Div. 530), and Margrander v. Fox (272 App. Div. 788).
Because of a misuse of the term burden of proof, the uninitiated sometimes remark that a party alleging fraud, duress or undue influence has the burden of proving these contentions. However, in the context of a litigation involving fraud in the factum in procuring a release it would be more precise to state that, since the law does not presume fraudulent acts, a party defending a suit on the basis of a release has a presumption in his favor that there have been no irregularities in its execution. This presumption will be -sufficient to establish a prima facie case if the party can also prove authenticity of the signature on the document. -Such proof shifts the burden of going forward, if he hopes to defeat the claim, to the adversary to show that there has been fraud, duress or some other fact which will be sufficient to void the release. Once this party puts in some evidence, the presumption is no longer in the case and, as previously indicated, since the burden of persuasion does not shift throughout trial, the person who is defending the action, claiming as a defense the release, must come forward with real evidence to sustain his burden as to the legality of the release or otherwise suffer a directed verdict. (See Potts v. Pardee, 220 N Y. 431, 433; St. Andrassy v. Mooney, 262 N. Y. 368, 371; Richardson, Evidence [Prince ed., 1964], § 101; 9 Wigmore, Evidence [3d ed., 1940], § 2491, p. 289.)
A release even though properly executed may, nonetheless, be void (see, e.g., Kamerman v. Curtis, 285 N. Y. 221, 225 ; Gilbert v, Rothschild, 280 N. Y. 66, 71). If a party is induced to sign in the belief that the paper is a document other than a release, or is unaware, through no fault of his own, that the document executed was in fact a release, because of his physical condition, then the release is void (Farrington v. Harlem, Sav. Bank, 280 N. Y. 1; Pimpinello v. Swift & Co., 253 N. Y. 159; Boxberger v. New York, N. H. &. R. R. Co., 237 N. Y. 75).
"When a prospective defendant in a negligence action seeks to have his adversary -sign away his cause of action, even though the injured party is in no position to understand the consequence of his act, or appreciate the legal effect of his signature, the party seeking to have the release signed is acting improperly. Simply because a patient in a hospital is physically able to *112 write Ms name, tMs fact is not dispositive of the issue of whether he was able to appreciate the significance of his act. Obviously, a patient who lacks the requisite mental capacity to enter into a contract cannot be a party to a valid release. A release signed in a hospital can be shown to be void by offering testimony of the circumstances surrounding the signing of the document.
In this case, the circumstances testified to by both the plaintiff and the defendant put in issue the propriety of the defendant’s conduct. The testimony presented an issue of fact for the jury whether the defendant had procured the plaintiff’s signature by his fraudulent conduct. Though normally the proponent of a document satisfies his burden of persuasion by offering the document, it is clear, as we have indicated, that, if his adversary raises the specter that the contract is void because of fraud, duress or incapacity in the execution of the agreement and offers proof with respect to that issue, then the party who seeks to sustain the validity of the document must come forward to rebut these facts by a preponderance of the evidence.
When a case develops in this fashion at trial the Judge should instruct the jury that the burden of proof with respect to the valid execution of the release is upon the party seeking to enforce the agreement by a preponderance of the evidence. In Boxberger v. New York, N. H. & H. R. R. Co. (237 N. Y. 75, supra), a case in which a plaintiff sued to recover damages for personal injuries and the defendant pleaded, as a separate defense, a release, we passed upon the issue presented by this appeal. In Boxberger a separate trial was held to determine the validity of the release. To establish the defendant’s prima facie case a purported release executed by plaintiff was offered and received in evidence. The plaintiff, however, testified that, although the release was signed by him, it was done because of the misrepresentations of the defendant. Defendant called a witness who testified that the plaintiff signed the release with full knowledge of the consequence of Ms act. The. trial court charged the jury over plaintiff’s exception that the burden of proof was upon the plaintiff to establish that the release was not Ms act. We held tMs charge was erroneous.
Since the defendants have the burden of proving by the preponderance of the evidence that the release was valid at *113 its inception, and this burden did not shift throughout the case, the Appellate Division was entirely correct in holding that the ‘ ‘ defendant should bear the burden of persuading the jury that the plaintiff, when he signed the release, knew the legal effect of his act and intended the release to cover all injuries within its scope.” (29 A D 2d 881, 882.)
The Appellate Division’s conclusion that the jury should be informed of the standard of conduct embodied in section 270-b of the former Penal Law is also correct. Section 270-b expresses the collective opinion of the community, as expressed by the Legislature, concerning the proper conduct for persons who seek to have releases executed. In the present litigation the evidence raised a question of whether the release was properly executed. In order for the jury to conclude that the release was void, it had to analyze the conduct of the defendant to determine whether if could be characterized as deceitful. The standard expressed in the statute is relevant to this determination.
Even though Chodorowski possibly did not have the specific intent to act deceitfully in his relationship with the plaintiff, his decision to have the release signed two days after the accident could be found to be so callous, done in such haste, and without knowledge of the actual facts, that, in light of the fact that in procuring the plaintiff’s signature he failed to disclose the character and significance of the instrument, his actions could be labeled deceitful. (Of. Ultramares Corp. v. Touche, 255 N. Y. 170.) Since the standard expressed in the statute was relevant to the jury’s determination of the issue posed in the case, it should be charged.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and judgment directed pursuant to appellants’ stipulation.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Bkeitel and Jasen concur.
Order affirmed, etc.

 Section 270-b of the former Penal Law (now Judiciary Law, § 480) provided; “It ¡shall be unlawful for any person to enter a hospital for the purpose of negotiating a settlement or obtaining a general release or statement, written or oral, from any person confined in said hospital or sanitarium as a patient, with reference to any personal injuries for which said person is confined in. said hospital or sanitarium within fifteen days after the injuries were sustained, unless at least five days prior to the obtaining or procuring of such general release or statement such injured party has signified in writing his willingness that such general release or statement be given. This section shall not apply to a person entering a hospital for the purpose of visiting a person therein confined, as his attorney or on behalf of his attorney.”