## In re WORLDCOM, INC., et al., Debtors.

No. 02–13533 (AJG).

United States Bankruptcy Court, S.D. New York.

Aug. 1, 2003.

Piper Rudnick LLP, Special Counsel for Debtors, New York City, Timothy W. Walsh, Eric B. Miller, of Counsel.

Daniel P. Taber, Attorney for Bracknell Corporation, by Arthur J. Petrie, Shareholder, Daniel P. Taber, of Counsel, Minneapolis, MN.

## MEMORANDUM DECISION AND ORDER GRANTING DEBTORS' OBJECTION TO PROOF OF CLAIM FILED ON BEHALF OF BRACKNELL CORPORATION

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### I. Introduction

Before the Court is Debtors' Objection to Proof of Claim of Bracknell Corporation (Claim # 23461) (the "Objection"), filed by WorldCom, Inc. and certain of its direct and indirect subsidiaries (collectively, "WorldCom" or "Debtors") on April 22, 2003. The Objection seeks the disallowance of Bracknell Corporation's ("Bracknell" or the "Company") proof of claim (that is, Claim # 23461, in the amount of $500,000,000, hereinafter the "Claim" or the "Proof of Claim"), filed on its behalf by Arthur J. Petrie (the "Claimant"), a Bracknell shareholder, on January 23, 2003. The Objection asserts that: (i) the Claim is barred by a certain settlement agreement

previously entered into by the Settlement Parties (as such term is defined below); and (ii) the Claim should be disallowed because Claimant failed to obtain proper authorization to assert a derivative claim on behalf of Bracknell.[1]

Claimant responded by filing its Memorandum Opposing Debtors' Objection to Proof of Claim of Bracknell Corporation (Claim # 23461) (the "Opposing Memorandum"), entered on May 20, 2003. In the Opposing Memorandum, Claimant responds that: (i) the release does not constitute a bar to Claimant's recovery; and (ii) Claimant is authorized to file the Claim pursuant to principles governing shareholder derivative actions. A hearing on the matter was held before the Court on June 3, 2003 (the "June 3rd Hearing").

After due deliberation and for the reasons set forth below, the Objection is granted.

## II. Background

Claimant is a shareholder of Bracknell, a Canadian corporation based in Minneapolis, Minnesota. Historically, Bracknell derived approximately 85% of its revenues from its United States operations. Since November 2001 the Company has not maintained active business operations. Claimant asserts that, as a result of accounting irregularities in WorldCom's 1999 and 2000 filings with the Securities and Exchange Commission (the "Fraudulent Statements"), Bracknell was fraudulently induced to complete a merger (the "Merger") with Able Telecom Holding Corp. ("Able"), then the sixth largest broadband infrastructure services provider in the United States, that ultimately drove the Company to insolvency and deprived shareholders of substantial value (the "Merger Inducement Claim").

From May through December 2000, Bracknell negotiated and completed a merger with Able, a Florida corporation. WorldCom, a global communications company, had long been a major shareholder and significant creditor of Able. Pursuant to the Merger, Bracknell capitalized on Able's relationship with WorldCom by negotiating a revised Master · Services Agreement (the "MSA"), along with a Commitment Agreement, relating to services performed by Able for WorldCom. The M.S.A. § guaranteed Bracknell and its subsidiaries a minimum yearly revenue of $55 million and at least $390 million over the contract's six-year life. Also driving the Merger was Bracknell's desire to gain control of Adesta Communications ("Adesta"), an Able subsidiary that at the time was a leading developer of fiber optic network services. Bracknell's management believed that the Merger would allow the Company to penetrate new markets and gain access to untapped customers, enhance Bracknell's existing capabilities, and enable the Company to exploit

---

1. Debtors argue that Claimant does not have standing to assert the Claim because Rule 3001(b) of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that "[a] proof of claim shall be executed by...the creditor's authorized agent." Fed. R. Bankr.P. 3001(b). Debtors assert that Claimant is not an authorized agent because, based upon traditional rules concerning derivative actions, Claimant failed to approach Bracknell's directors to demand that they file a claim before doing so in their stead. Claimant responds that such a demand would have been futile, since Bracknell was insolvent and its directors had resigned by the time the Claim was initiated. The Court does not reach the "standing issue" because the Court finds that the Claim is barred by a settlement agreement entered into on November 27, 2001. However, the Court notes that there are certain choice of law issues that would need to be addressed before the standing issue, including whether demand on the Banking Group (as such term is defined below) was required under these circumstances, could be determined.

potential synergies between Able and Bracknell. The terms of the Merger were heavily negotiated by senior management of Bracknell, Able and World-Com over a period extending from May through August 2000. The Merger was publicly announced on August 24, 2000, and it received shareholder approval on December 22, 2000.

By mid-July 2001 Bracknell faced a liquidity crisis. Pursuant to its existing credit facilities (the "Credit Facilities"), Bracknell had a substantial principal payment due to its lenders (the "Banking Group") on July 31, 2001. Bracknell advised Banking Group in early July 2001 that it would be unable to make the principal payment and to continue meeting its basic operating expenses. Banking Group responded by providing Bracknell with a $20 million extension of credit and deferred a scheduled principal payment of $12.5 million until October 31, 2001.

In September 2001, WorldCom alleged default under the M.S.A. § on the part of Bracknell's subsidiaries and significantly reduced its business with them. World-Com also claimed that Bracknell was in default of certain obligations under the Commitment Agreement and declared such agreement terminated. On October 12, 2001, Bracknell and WorldCom entered into an escrow agreement (the "Escrow Agreement") regarding payments owed to Bracknell pursuant to the M.S.A. § and the Commitment Agreement.

On October 31, 2001, Bracknell was unable to make a principal payment that had come due pursuant to the Credit Facilities. The Banking Group refused to extend further credit to the Company, instead disclosing its intention to declare Bracknell in default of the Credit Facilities and to enforce its security interests. Bracknell's officers and directors resigned on November 1, 2001, and the Company's stock was halted from trading on the Nasdaq National Market the following day. Banking Group proceeded to assume control of Bracknell through a power of attorney contained in the Credit Facilities, and to sell off its operating subsidiaries while they could still be liquidated as going concerns. Within three months Banking Group had sold all of Bracknell's subsidiaries and settled the Company's accounts receivable for cash. By February 2002, Bracknell's corporate headquarters in Minneapolis, Minnesota had been vacated, and Bracknell has not regained management or operational capabilities since that time.

On November 27, 2001, Banking Group, still acting on Bracknell's behalf, and WorldCom (the "Settlement Parties") executed a settlement agreement (the "Settlement Agreement"), pursuant to which the M.S.A. § was terminated and the Commitment Agreement was amended. Although each side alleged that the other had breached the terms of the MSA, the Settlement Agreement stipulated that the $3,524,756 held in escrow pursuant to the Escrow Agreement would be released to Bracknell in consideration of, among other things, a broadly worded mutual release. The release provision (the "Release") contained in the Settlement Agreement provides, in pertinent part, as follows:

> In consideration hereof, [Bracknell]...hereby release[s] and forever discharge[s] [WorldCom]...from and against all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, and whether now known or unknown, liquidated or unliquidated, that [Bracknell] now [has] or may have had, or thereafter claim[s] to have, on

behalf of themselves, or any other person or entity, at any time prior to and including the date of this Agreement, including, without limitation, those relating to or arising out of the MSA, the Merger Agreement, and all claims related to the performance of the Commitment Agreement prior to the date hereof.

On July 21, 2002 and November 8, 2002, WorldCom and certain of its direct and indirect domestic subsidiaries commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Such cases have been consolidated for procedural purposes only and are being jointly administered. Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

Claimant contends that, prior to the announcement of the Merger, Bracknell had a capitalized net worth in excess of $100 million, and that following Banking Group's liquidation of the Company's assets Bracknell was left with over $250 million in debt. Claimant seeks compensatory and rescissionary damages to restore the value of the Company prior to the Merger.

### III. Jurisdiction

The Court has jurisdiction over the Objection pursuant to § 1334(b) of title 28 of the United States Code. The Objection is a core proceeding pursuant to § 157(b) of title 28 of the United States Code. Venue is proper in the Southern District of New York pursuant to § 1408 of title 28 of the United States Code.

### IV. Discussion

*A. The Release Language Contained in the Settlement Agreement Bars the Claim*

■ Debtors argue that the Settlement Agreement and the Release contained therein effectively bar the Claim, while Claimant asserts that they do not. Since, without contractual releases, the settlement of disputes would be rendered almost impossible, releases "should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." *Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines,* No. 86 Civ. 3266, 1987 WL 16369, at *1 (S.D.N.Y.1987) (citing *Mangini v. McClurg,* 24 N.Y.2d 556, 301 N.Y.S.2d 508, 513, 249 N.E.2d 386 (1969)). The execution of a release represents a serious contractual undertaking, and policy dictates that the terms contained therein be accorded a strong presumption of validity by the Court. The language of the Settlement Agreement and the Release in the current proceeding is clear and unambiguous and, therefore, in executing the Settlement Agreement, the Settlement Parties bound themselves to its terms. *See Booth v. 3669 Delaware, Inc.,* 92 N.Y.2d 934, 680 N.Y.S.2d 899, 900, 703 N.E.2d 757 (1998) (citing *Mangini,* 301 N.Y.S.2d at 513, 249 N.E.2d 386) ("Where . . . the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties.").

■ When faced with a deliberately prepared and executed written agreement, a heavy presumption exists that such agreement manifests the parties' true intentions, and evidence of a very high order is necessary to overcome this presumption. *See Schuman v. Gallet, Dreyer & Berkey, L.L.P.,* 180 Misc.2d 485, 689 N.Y.S.2d 628, 630 (N.Y.Sup.Ct.1999) (citing *George Backer Mgmt. Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 413 N.Y.S.2d 135, 139, 385 N.E.2d 1062 (1978)). The Court notes that Claimant has not alleged that the Set-

tlement Agreement fails to reflect the intentions of the Settlement Parties.[2] "[I]n interpreting a release under traditional contract principles, we are compelled to bar claims precluded by the plain language of the release, including allegations of fraud." *Pickwick Communications, Inc. v. Weinberg*, No. 91 Civ. 1642, 1994 WL 620950, at *12 (S.D.N.Y.1994) (citing *Stiber v. Cotrone*, 132 A.D.2d 791, 517 N.Y.S.2d 336 (N.Y.App.Div.1987)). Given the clear and unambiguous language of the Settlement Agreement, the Court looks to the terms contained therein to determine the intentions of the Settlement Parties and the impact that the Settlement Agreement has on the Claim.

### 1. The Merger Agreement is Specifically Referenced in the Settlement Agreement

██ Claimant argues that since the Settlement Agreement, according to its terms, relates only to the disputes contained therein, the Settlement Agreement should operate solely with respect to claims involving the alleged breach under the M.S.A. § and the Commitment Agreement and should not bar the Merger Inducement Claim. However, the Court finds that the Settlement Agreement's plain language makes clear that it bars claims arising from the Merger, as well as those relating to the M.S.A. § and the Commitment Agreement.

In determining whether the Settlement Agreement bars the Merger Inducement Claim, the Court looks to the terms set forth therein. According to New York law, a release is in essence a contract whose interpretation is governed by contract law principles. *See Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir.1985). *See also Kaminsky v. Gamache*, 298 A.D.2d 361, 751 N.Y.S.2d 254, 255 (N.Y.App.Div.2002) (citing *Mangini*, 301 N.Y.S.2d at 512, 249 N.E.2d 386). The Second Circuit has held that, "[w]hen interpreting an unambiguous contract, 'words and phrases are given their plain meaning.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir.2000) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996)). The Court finds that the Settlement Agreement unambiguously and clearly indicates that it shall apply to the merger agreement relating to the Merger (the "Merger Agreement"), along with the M.S.A. § and the Commitment Agreement.

Claimant argues that the second paragraph of the introduction to the Settlement Agreement, which reads, "[t]his Agreement is made as a compromise between the Parties for the complete and final settlement of their claims...with respect to the disputes described below," (Settlement Agreement, p. 1), precludes the application of the Settlement Agreement to the Merger since, Claimant alleges, the Settlement Agreement only addresses allegations concerning the breach of the M.S.A. § and the Commitment Agreement. However, the Preamble to the Settlement Agreement (the "Preamble") makes clear that the Settlement Agreement also applies to disputes arising under the Merger Agreement.

---

**2.** The Preamble of the Settlement Agreement states that in executing the Settlement Agreement, Banking Group "exercised certain of its rights under the Credit Facilities, including, without limitation, authority to act as power of attorney for [Bracknell]." (Settlement Agreement, Preamble, p. 4). In general, a written power of attorney is a formal contract and creates a principal/agency relationship. *See Northwestern Nat'l. Ins. Co. v. Alberts*, 769 F.Supp. 498, 508 (S.D.N.Y.1991). The Court notes that Claimant has not alleged that Banking Group did not possess the proper authority to enter into the Settlement Agreement, or that it acted beyond the scope of its power of attorney in doing so.

Specifically, the Preamble states that the Settlement Agreement seeks to resolve and settle "all claims and disputes between them [WorldCom and Bracknell] *arising out of, or in any way related to* the MSA, the past performance of the Commitment Agreement, *or the Merger Agreement.*" (Settlement Agreement, Preamble, p. 3) (emphasis added). The "Merger Agreement" is defined in the Settlement Agreement as "the Amended and Restated Agreement and Plan of Merger, pursuant to which [Bracknell] acquired [Able], including [Adesta]." (Settlement Agreement, Preamble, p. 2). Since the Merger arose out of and relates to the Merger Agreement, the above-quoted Preamble passage supports the proposition that the Settlement Agreement also applies to the Merger.

Furthermore, the Settlement Agreement makes clear that actions arising out of the Merger Agreement shall be released and discharged. The Release states that, "[Bracknell]...hereby release[s] and forever discharge[s] [WorldCom]...from and against all actions, causes of actions, claims, suits, debts, damages, judgments, liabilities and demands whatsoever ...whether now known or unknown...that [Bracknell] now [has] or may have had...*including, without limitation, those relating to or arising out of the...Merger Agreement...*" (Settlement Agreement, Section 3.1, p. 7) (emphasis added). Once again, since the Merger arose out of and relates to the Merger Agreement, and given that the Settlement Agreement specifically discharges World-Com from all actions brought by Bracknell relating to or arising out of the Merger Agreement, the Court finds that the Merger Agreement, and by extension the Merger, are unambiguously covered by the plain language of the Settlement Agreement, and all claims relating thereto are effectively barred.

### 2. The Broad Language of the Release is Valid

 Beyond specifically referencing the fact that the Settlement Agreement relates to all claims relating to or arising out of the Merger Agreement, the Settlement Agreement also utilizes broad language that bars all claims that might be raised by Bracknell, including claims relating to the Merger. Section 1.6 of the Settlement Agreement states that "[t]he settlement shall finally settle and resolve, among other things, *any and all claims asserted or which could have been asserted* by [Bracknell] against [WorldCom], or [WorldCom] against [Bracknell], as of the date of this Agreement." (Settlement Agreement, Section 1.6, p. 6) (emphasis added). Furthermore, the text of the Release releases and discharges WorldCom from "*all* actions, causes of actions, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever ... *whether now known or unknown*... that [Bracknell] now [has] or may have had...including, without limitation, those relating to or arising out of the...Merger Agreement..." (Settlement Agreement, Section 3.1, p. 7) (emphasis added). The plain, unambiguous language of the Settlement Agreement makes clear that "any and all claims," both known and unknown, shall be settled and resolved pursuant to its terms, and the Court finds this to include the Claim.

An expansive release will generally be given its intended effect unless a releasor can demonstrate that it intended a more limited agreement. *See Pickwick*, 1994 WL 620950, at *12 ("[A] broad release...bars all claims, irrespective of whether these claims had ripened at the time of the release's execution or whether the releasor was even aware of them at the time of execution."). *See also In re Thomson McKinnon Secs., Inc.*, 132 B.R. 9, 13 (Bankr.S.D.N.Y.1991) (quoting *Gordon v.*

*Vincent Youmans, Inc.,* 358 F.2d 261, 263 (2d Cir.1965)) ("The scope and meaning of a release will be determined by the manifested intent of the parties—in Corbin's words, 'by the process of interpretation, just as in the case of determining the meaning of an executory contract.'"). New York courts have recognized that under certain circumstances, broad releases may be avoided with respect to uncontemplated transactions. *See Mangini,* 301 N.Y.S.2d at 513, 249 N.E.2d 386. However, the Release contained in the Settlement Agreement specifically refers to "all actions...whether known or unknown," thereby reflecting the clear and unambiguous intent of the Settlement Parties to bar all uncontemplated transactions.

"[I]f from the particular language of the release or from the circumstances of the negotiated settlement, there was a conscious and deliberate intention to discharge liability from all consequences..., the release will be sustained and bar any future claims of previously unknown injuries." *Id.* at 514, 249 N.E.2d 386. In executing the Settlement Agreement, Banking Group, a sophisticated entity, manifested its intention to bargain away all existing and potential claims against WorldCom, including those relating to the Merger. Furthermore, Claimant has not alleged that Banking Group intended the Release to be more limited in scope than is indicated by the plain language of the Settlement Agreement. Therefore, the Court finds that the broad language of the Settlement Agreement is valid, and that claims relating to the Merger are effectively barred by such broad language.

*3. Claimant has Failed to Allege with Particularity or Present Evidence Supporting a Claim of Fraud in the Inducement of the Settlement Agreement*

 As discussed in Sections IV(A)(1) and (2) above, the Court has found that the Settlement Agreement effectively bars the Claim. Therefore, in order for Claimant to prevail on its claim, Claimant must seek to have the Settlement Agreement voided on the grounds of fraud, duress or some other fact sufficient to invalidate the Settlement Agreement. *See Joint Venture Asset Acquisition v. Zellner,* 808 F.Supp. 289, 302 (S.D.N.Y.1992). *See also Fleming v. Ponziani,* 24 N.Y.2d 105, 111, 299 N.Y.S.2d 134, 247 N.E.2d 114 (N.Y.1969). "[I]f a party is fraudulently induced to execute a release, the release...may be voided by the defrauded party." *Ladenburg Thalmann & Co., v. Imaging Diagnostic Sys., Inc.,* 176 F.Supp.2d 199, 204 (S.D.N.Y.2001). If Claimant had set forth "some evidence" in support of an allegation of fraud in the inducement of the Settlement Agreement, then WorldCom would have had to sustain its burden of demonstrating the legality of such agreement. *See Joint Venture,* 808 F.Supp. at 302. *See also Fleming,* 24 N.Y.2d at 111, 299 N.Y.S.2d 134, 247 N.E.2d 114. As stated in *Joint Venture:*

> [O]nce a plaintiff or counterclaimant has put into the record at least "some evidence" showing there has been fraud, duress, or some other fact that is sufficient to void the release, the party asserting the release as a defense must come forward with "real evidence" to sustain its burden regarding the legality of the release...

*Joint Venture,* 808 F.Supp. at 302. *See also Fleming,* 24 N.Y.2d at 111, 299 N.Y.S.2d 134, 247 N.E.2d 114.

 Not only has Claimant failed to offer evidence into the record showing fraud, duress, or some other fact that is sufficient to void the Settlement Agreement, but Claimant has also failed to allege with any degree of particularity fraud

in the inducement of the Settlement Agreement or any other fact upon which the Settlement Agreement might be voided. Furthermore, Claimant has not alleged or presented evidence supporting any relationship whatsoever between the Fraudulent Statements and Banking Group entering into the Settlement Agreement, or that Banking Group examined, considered or reasonably relied upon the Fraudulent Statements in deciding to enter into the Settlement Agreement. Since Claimant has not even attempted to void the Settlement Agreement, the Court finds the Settlement Agreement to be valid and binding on the Settlement Parties.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b) (as made applicable to this bankruptcy proceeding by Fed. R. Bankr.P. 7009). Furthermore, in *Fonseca v. Columbia Gas Sys., Inc.*, the court states that "[t]o satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and were the statements were made, and identify those responsible for the statements." *Fonseca v. Columbia Gas Sys., Inc.*, 37 F.Supp.2d 214, 230 (W.D.N.Y.1998).

Although Claimant argues in the Opposing Memorandum that the Settlement Agreement should not bar the Merger Inducement Claim, Claimant makes no reference to a claim of fraud in the inducement of the Settlement Agreement, nor does Claimant allege or present evidence supporting any relationship between the Fraudulent Statements and Banking Group entering into the Settlement Agreement. Likewise, the Amended Summary

of Claim # 23461 of Bracknell Corporation (the "Claim Summary") sets forth allegations concerning the Merger Inducement Claim, but it is silent regarding issues of fraud in the inducement of the Settlement Agreement.

During the June 3rd Hearing, the Court asked Claimant, "[w]hat is fraudulent inducement? Of what? Induce into the settlement agreement or into the merger?" Claimant responded:

> *In this case it is inducement into the merger,* but it also carries forward—at the time the settlement agreement was done at that time there were no officers and directors of the company. This was the banking group settling an escrow claim [sic].

Tr. 6/3/03 p. 24:3–11 (emphasis added).

The Court notes that Claimant did indicate in the above response that its argument deals with the Merger Inducement Claim, but failed to articulate with particularity, as required by Rule 9(b), any allegation of fraud in the inducement of the Settlement Agreement. Although Claimant then proceeded to discuss at length the rationale in support of its argument that the Settlement Agreement does not bar the Merger Inducement Claim, at no point during the June 3rd Hearing did Claimant render any allegations with particularity or present evidence supporting a connection between the Fraudulent Statements and Banking Group entering into the Settlement Agreement. Beyond general allegations concerning WorldCom's fraud in relation to the Merger Inducement Claim, the Court finds the record to be completely void of any allegations stated with particularity or evidence supporting a claim of fraud in the inducement of the Settlement Agreement.

■ To successfully assert a claim of fraud in relation to the Settlement Agree-

ment, the Claimant must establish that WorldCom made "(1) a material misrepresentation or omission (2) that was made by the defendant with an intent to defraud the plaintiff, (3) that was reasonably relied on by the plaintiff, and (4) that caused injury to the plaintiff." *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 233 F.Supp.2d 550, 552–53 (S.D.N.Y.2002). *See also Ladenburg*, 176 F.Supp.2d at 205 (quoting *Liling v. Segal*, 220 A.D.2d 724, 726, 633 N.Y.S.2d 199 (N.Y.App.Div.1995)) (defining the elements of fraud as "a material misrepresentation of fact, made with knowledge of its falsity, with intent to deceive, justifiable reliance and damages").

The Court notes that to date Claimant has not alluded to any facts or presented any evidence that supports the conclusion that Banking Group examined, considered or reasonably relied upon the Fraudulent Statements in entering into the Settlement Agreement. If the Fraudulent Statements were not or should not have been a significant factor in bringing about the Settlement Agreement, then the Fraudulent Statements most likely would not amount to a material misrepresentation by WorldCom. The Court further notes that, since the Settlement Agreement involved a one-time lump sum payment of escrowed funds to Bracknell in consideration of a release of claims, WorldCom's financial health was irrelevant to its ability to meet its obligations under the Settlement Agreement. Absent a demonstrated relationship between the Fraudulent Statements and Banking Group entering into the Settlement Agreement, any argument that Banking Group was fraudulently induced into the Settlement Agreement most likely would fail.

In the Opposing Memorandum, Claimant incorrectly cites to *Fonseca v. Columbia Gas Sys., Inc.*, 37 F.Supp.2d 214 (W.D.N.Y.1998), in support of the proposi-

tion that, since the Settlement Agreement lacked certain language necessary to bar a claim of fraud in the inducement of a prior transaction, the Merger Inducement Claim should not be barred by the Settlement Agreement. However, rather than suggesting language necessary to bar a claim relating to a prior transaction such as the Merger, *Fonseca* deals with issues of fraud in the inducement of a settlement agreement. Since Claimant has misapplied *Fonseca* and, as discussed above, given that Claimant has not made any allegations with particularity or presented evidence supporting a claim of fraud in the inducement of the Settlement Agreement, the Court need not address *Fonseca* in connection with the current proceeding.

In failing to allege fraud in the inducement of the Settlement Agreement with particularity or any other fact upon which the Settlement Agreement might be voidable, or to allege or present evidence supporting any relationship whatsoever between the Fraudulent Statements and Banking Group entering into the Settlement Agreement, Claimant has not even attempted to void the Settlement Agreement. Therefore, the Court finds the Settlement Agreement to be valid and binding on the Settlement Parties.

### 4. Summary

The Settlement Agreement indicates in clear and unambiguous language the fact that it releases WorldCom and Bracknell from all present and future claims, both known and unknown, arising from and relating to the Merger Agreement, including the Merger itself. Furthermore, the Court finds that the broad language of the Settlement Agreement and the Release also validly bars all claims relating to the Merger. Lastly, in failing to allege with particularity fraud in the inducement of the Settlement Agreement or any other

fact upon which the Settlement Agreement might be voidable, or to allege or present evidence supporting any relationship whatsoever between the Fraudulent Statements and Banking Group entering into the Settlement Agreement, Claimant has not even attempted to void the Settlement Agreement. Therefore, for the above reasons, the Court holds that the Settlement Agreement is valid and binding upon the Settlement Parties, and that the Claim is barred by the Settlement Agreement and the Release contained therein.

### B. Fraudulent Inducement of the Merger

Claimant has alleged in the Claim Summary that Bracknell was "put out of business" as a result of being induced to enter into the Merger by the "representations of WorldCom with regard to the profitability of building telecom network systems, including WorldCom's quarterly and annual SEC filings." Claimant has not alleged with particularity that WorldCom contributed to Bracknell's insolvency through its business dealings with the Company, but rather argues that WorldCom induced Bracknell to enter into a Merger that led the Company to undertake unprofitable telecom projects. As discussed in Section IV(A) above, the Court has found that the Claim is barred by the Settlement Agreement. However, even if the Court had not found the Claim to be so barred, based upon the facts presented by Claimant to date, it is unlikely that Claimant would prevail on the underlying Merger Inducement Claim.

In the Claim Summary, Claimant outlines Bracknell's reasons for entering into the Merger as follows:

Bracknell's management believed that: (1) Able's capabilities would compliment Bracknell's expertise in critical use telecom facilities and in deploying network infrastructure within buildings; (2) the merger would extend Bracknell's business into new markets and brings [sic] a number of important new customers to Bracknell; and (3) that following the merger, Bracknell would have full end-to-end infrastructure capabilities to serve the telecom market.

Amended Summary of Claim # 23461 of Bracknell Corporation, p. 4.

The Claim Summary discusses at length the fact that, in pursuing the Merger, Bracknell was motivated by a desire to expand its reach in a thriving telecom market and to avail itself of potential synergies with Able. Given the multitude of benefits that Bracknell thought would be derived from the Merger, as described in the Claim Summary, and the attractiveness of the telecom industry in 2000, it appears that, in consummating the Merger, Bracknell was primarily motivated by the multi-faceted appeal of the prospective business opportunity, as opposed to the Fraudulent Statements and WorldCom's alleged "representations" concerning the telecom market. Furthermore, as discussed below, Bracknell had a responsibility to reach its own conclusions, independent of WorldCom's assertions during negotiations, regarding the future of the telecom market and the viability of the Merger. Therefore, in order to prevail on its claim, Claimant would have to establish that Bracknell, in deciding to enter into the Merger, had a right to rely on WorldCom's assertions regarding the telecom industry.

Claimant argues in the Claim Summary that the representations WorldCom made to Bracknell "overstat[ed] the profitability of the telecom network market ... [and] misrepresent[ed] the true nature of the market." In completing the Merger, WorldCom and Bracknell were both parties to an arm's length commercial transaction in which neither side owed the other any fiduciary-based duty of disclo-

sure. *Glidden Co. v. Jandernoa*, 5 F.Supp.2d 541, 549 (W.D.Mich.1998) (discussing both New York and Michigan law). *See also Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir.1995). Thus, Bracknell was obliged to assess the viability of the Merger independent of any assertions made by WorldCom regarding the telecom industry. *See Cantor Fitzgerald Inc. v. Cantor Fitzgerald Secs.*, 268 A.D.2d 324, 701 N.Y.S.2d 407, 410 (N.Y.App.Div.2000) (quoting *Charles Hyman, Inc. v. Olsen Indus.*, 227 A.D.2d 270, 277, 642 N.Y.S.2d 306 (N.Y.App.Div.1996)) ("In entering into a combination, the law imposes an obligation [on the purchaser] to ascertain the suitability of the acquired enterprise... 'A party will not be relieved of the consequences of his own failure to proceed with diligence or to exercise caution with respect to a business transaction,' even where the rescission is sought on the grounds of fraudulent inducement."). As a sophisticated entity, Bracknell had ample time and opportunity to explore the Merger's viability and to assess the business risk of expanding its presence in the telecom market, independent of any assertions made by WorldCom during negotiations, and to then act on its own assessment.

The Court also notes the inherent weaknesses in the argument that Bracknell relied to its detriment on WorldCom's representations concerning WorldCom's ability to meet its obligations under the M.S.A. § and the Commitment Agreement. Bracknell alerted Banking Group to the fact that it was facing a liquidity crisis in mid-July 2001, two months before WorldCom alleged default under the M.S.A. § on the part of Bracknell's subsidiaries and significantly reduced its business with them. Based on the timing of Bracknell's liquidity crisis, and the fact that WorldCom appears to have fulfilled its obligations pursuant to the M.S.A. § through the commencement of such crisis, it does not appear that Bracknell's reliance on WorldCom's ability to comply with the M.S.A. § precipitated Bracknell's insolvency. Moreover, Claimant does not allege with particularity that WorldCom's fraud and financial problems caused WorldCom to reduce its business with Bracknell. Rather, Claimant's own papers support the proposition that it was the collapse of the overall telecom market, as opposed to any specific act of WorldCom, that caused Bracknell's dissolution. The downturn in the telecom business was an industry wide phenomenon and was not specific to Bracknell, suggesting that Bracknell's demise might well have been the result of circumstances extending beyond WorldCom's fraud.

Since the Claim is barred by the Settlement Agreement, the Court need not reach the issue of whether the Merger was fraudulently induced. However, the Court does note that, for the above reasons, based upon the facts asserted by Claimant in the Opposing Memorandum, the Claim Summary and at the June 3rd Hearing, it is likely that Claimant's argument that WorldCom fraudulently induced Bracknell into entering into the Merger would fail had the Court been compelled to rule on the issue at this time.

## V. Conclusion

The Court finds that the Settlement Agreement specifically releases WorldCom and Bracknell from all present and future claims, both known and unknown, arising from and relating to the Merger Agreement, including the Merger itself. The broad language of the Settlement Agreement and of the Release contained therein also effectively captures the Merger Agreement and, by extension, the Merger. Furthermore, in failing to allege with particularity fraud in the inducement of the Settlement Agreement or any other fact upon which the Settlement Agreement

might be voidable, or to allege or present evidence supporting any relationship whatsoever between the Fraudulent Statements and Banking Group entering into the Settlement Agreement, Claimant has not even attempted to void the Settlement Agreement. Therefore, for the above reasons, the Court holds that the Settlement Agreement is valid and binding upon the Settlement Parties, and that it clearly and unambiguously bars the Claim.

Claimant also makes general allegations that WorldCom fraudulently induced Bracknell to enter into the Merger itself. Although the Court need not reach this issue since the Claim is effectively barred by the Settlement Agreement, it is unlikely that the Merger Inducement Claim would succeed. Given the multitude of factors that contributed to Bracknell's decision to enter into the Merger, as described by Claimant in the Claim Summary, it does not appear that the Fraudulent Statements were the primary factor in motivating Bracknell to complete the Merger. Moreover, Bracknell had an independent duty to assess the viability of the Merger as it relates to the overall telecom industry, despite any assertions that WorldCom might have made during negotiations. Thus, in order to prevail on its claim, Claimant would have to establish that Bracknell had a right to rely on WorldCom's assertions regarding the telecom industry in deciding to enter into the Merger.

Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that WorldCom's objection to the Proof of Claim is granted; and it is further

ORDERED, that the Proof of Claim is expunged.