(August 12, 1999)

■ LEXINGTON INSURANCE COMPANY, Appellant, v COMBUSTION ENGINEERING, INC., Respondent and Third-Party Plaintiff-Respondent. AIU INSURANCE COMPANY et al., Third-Party Defendants-Appellants. [693 NYS2d 146] —Judgment, Supreme Court, New York County (Charles Ramos, J.), entered November 13, 1998, declaring that the 1991 settlement agreement and release executed by plaintiff, defendant and third-party defendants did not release plaintiff and third-party defendants

from their obligation to defend and indemnify defendant with respect to asbestos-related claims under policies issued prior to January 1, 1977, unanimously modified, on the law, without costs, to the extent of adding the words "except for the enforcement of said settlement agreement" to the declaration, and otherwise affirmed. Appeal from order, same court and Justice, entered December 8, 1997, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

In this declaratory judgment action, plaintiff Lexington Insurance Company seeks a judicial declaration of the scope of a 1991 settlement agreement and release executed between Lexington and the third-party defendant insurers on one hand, and defendant Combustion Engineering, Inc. on the other. Lexington and the third-party defendant insurers are affiliated with each other, and are known as the "AIG Companies." Between 1973 and 1986, the AIG Companies issued excess comprehensive liability insurance policies to Combustion. Beginning in the late 1970's, over 200,000 asbestos-related complaints were made against Combustion for personal injury and property damage arising from products and equipment it manufactured. Combustion, in turn, filed numerous claims with its various primary and excess insurer carriers seeking defense and indemnification under the respective policies. In 1983, 1986, 1988 and 1991, Combustion entered into settlement agreements with several of its primary and excess insurers.

It is the 1991 settlement agreement and accompanying release which are the subject of this action. The 1991 settlement agreement required one of the AIG companies, Insurance Company of the State of Pennsylvania (ISOP), to make immediate payments to Combustion totaling $6.8 million under its 1972 and 1973 policies, exhausting the 1972 policy. ISOP also agreed to potential liability of up to $8.4 million under the 1973, 1974 and 1975 policies. Payments under these policies would be allocated against the AIG Companies pursuant to an method adopted in the earlier 1983 settlement agreement, until these policies were exhausted.

Two provisions are at issue in this action. They are paragraph 4 of the 1991 settlement agreement, which is the allocation provision adopted from the 1983 agreement, and the accompanying release given by Combustion to the AIG Companies (including Lexington). Paragraph 4 provides: "It is understood and agreed that pursuant to the [1983 agreement], no allocation will be made by the Asbestos Administrator to any ISOP or other AIG Company Policy incepting on or after January 1,

1977 * * * [and] Combustion shall not allocate any sums for defense or indemnity costs relating to asbestos claims to such policies." Combustion's release of ISOP and the AIG Companies reads in pertinent part: "[Combustion] releases and discharges [ISOP/AIG Companies] * * * from all actions, causes of action [etc.] * * * which against [ISOP/AIG Companies], [Combustion] * * * ever had, now have or hereafter can, shall or may have under the 1973 policy, except for enforcement of the annexed [1991] Settlement Agreement and of the 1986 Agreement; under the 1974 and 1975 Policies, except for the enforcement of the annexed Settlement Agreement, *and, as to asbestos claims only, as set forth in the annexed Settlement Agreement under the other ISOP and other AIG Companies Policies referenced in said Settlement Agreement, except for enforcement of said Settlement Agreement*" (emphasis added).

Combustion argues that when paragraph 4 of the 1991 settlement agreement and the release are read together, they provide that ISOP and the AIG Companies were released from their obligations *only* on policies issued *after* January 1, 1977. The AIG Companies contend that the broadly termed release and its mention of "other ISOP policies and other AIG Company policies" was meant to release them from their obligations on *all* policies issued to Combustion. The AIG Companies also argue that the claim-allocation provision has an entirely different purpose, and is simply irrelevant to the scope of the release.

In the IAS Court, the parties argued, as they do now on appeal, that the agreements are unambiguous, and their legal effect may be determined without resort to extrinsic evidence. In its December 8, 1997 order, the IAS Court implicitly denied Lexington and the AIG Companies' motion for full summary judgment by granting their alternative request for partial summary judgment. It declared that they had no liability under policies issued on or after January 1, 1977. In an order dated September 30, 1998, the IAS Court granted Combustion's motion for summary judgment, stating that the agreements unambiguously provided "only a partial release" and therefore did not effect claims under pre-1977 policies. Judgment was entered, declaring that Lexington and the AIG Companies were not released from their obligations on policies issued prior to January 1, 1977.

The AIG Companies are not released from their obligations under all policies. Although the preliminary language is broad and includes a release of "all actions, causes of action [etc.]", it immediately narrows in scope upon reference to specific policies (that Combustion "shall or may have under the 1973

policy"). Where the language of a release " ' "is to be limited to only particular claims, demands, or obligations, the instrument will be operative as to those matters alone, and will not release other claims, demands or obligations" ' " (*Dury v Dunadee*, 52 AD2d 206, 209, quoting *Topat Equip. Co. v Porter*, 50 AD2d 1098, quoting 49 NY Jur, Release and Discharge, § 33, at 405). A release should not be construed to dispose of "matters which the parties did not desire or intend" (*Cahill v Regan*, 5 NY2d 292, 299). Thus, the recitation of specific policies in the release must be construed as a limitation on its scope (*see, Dury v Dunadee, supra*, at 209).

Although, as the AIG Companies argue, the releasor must establish that a broadly worded release is to be limited because of a mutual mistake or otherwise (*Mangini v McClurg*, 24 NY2d 556, 563), that rule does not apply here. The language of the release in this case was not broad or general. Rather, it was limited to the specific policies mentioned therein, and those referenced in the accompanying settlement agreement.

Nor is the scope of the release broadened by its last clause, stating "and, as to asbestos claims only, as set forth in the annexed Settlement Agreement *under the other ISOP and other AIG Companies Policies referenced in said Settlement Agreement*, except for enforcement of said Settlement Agreement" (emphasis added). The only "other" ISOP or AIG Companies policies specifically mentioned in the 1991 settlement agreement are a 1972 ISOP policy, and the post-1976 policies covered by the allocation provision in paragraph 4. Notably, the settlement agreement terminates any further liability under these policies. Paragraph 2 of the agreement provides that upon payment by ISOP to Combustion of $5.6 million, the 1972 policy "will be completely exhausted and ISOP will be relieved of any further liability" under such policy. Paragraph 4 prohibits allocation of any asbestos-related claims to any policies commencing on or after January 1, 1977. This effectively precludes any liability under these policies. Thus, the "other" ISOP and AIG Companies policies referred to in the release are those for which the settlement agreement terminated liability.

The AIG Companies' reading of the last clause of the release demonstrates the weakness of their position. They argue that *all* policies issued by ISOP and AIG Companies are covered by the release, since one of the introductory "Whereas" clauses in the settlement agreement states: "WHEREAS, various insurance policies have been issued by various AIG Companies to Combustion, *including but not limited to* [2 specific ISOP policies]" (emphasis added). This "including but not limited to"

language, which is not a substantive provision of the settlement agreement, merely alludes to the fact that other policies were issued to Combustion. It does not expand the scope of the release to include all policies. Such an interpretation would ignore the fact that "other" ISOP and AIG Companies policies, the 1972 policy and the post-1976 policies, are specifically mentioned in the settlement agreement. Additionally, it would render the reference to the specific policies in the release itself meaningless. As Combustion convincingly argues, there would have been little reason to identify specific policies in the release had the parties intended that the release cover all policies.

We modify the declaration solely to reflect that by the express terms of the settlement agreement, ISOP and the AIG Companies are released from their obligations under certain pre-1977 policies, to wit, the 1972, 1973, 1974 and 1975 policies, to the extent indicated in the 1991 settlement agreement. Concur—Ellerin, P. J., Mazzarelli, Rubin and Saxe, JJ.