■ Thomas P. Caruso et al., Appellants, v Northeast Emergency Medical Associates, P.C., Respondent. [862 NYS2d 867]—

Carpinello, J. Appeals (1) from an order of the Supreme Court (Reilly, Jr., J.), entered March 13, 2007 in Schenectady County, which, among other things, granted defendant's motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered June 15, 2007 in Schenectady County, which denied plaintiffs' motion for, among other things, renewal.

Plaintiffs had previously commenced a malpractice action against Ellis Hospital and physician Alex Pasquariello after plaintiff Thomas P. Caruso suffered severe brain injury as the result of an improperly diagnosed cerebral hemorrhage, including loss of his eyesight. Plaintiffs thereafter learned that Pasquariello was employed by defendant, as opposed to Ellis Hospital, and rendered treatment to Caruso pursuant to a contract between defendant and the hospital. Plaintiffs did not move to amend the complaint to add defendant as a party in the underlying malpractice action.

Following the dismissal of all claims against Ellis Hospital except those premised on vicarious liability, plaintiffs entered into an open court, on the record, settlement agreement with Ellis Hospital and Pasquariello. By this agreement, plaintiffs were to receive $3,000,000 from Pasquariello and $1,000,000 from Ellis Hospital. In addition, Ellis Hospital agreed to pay plaintiffs an additional $1,000,000 or, at its option, assign its contractual indemnification rights against defendant to plaintiffs. The assignment was "limited to the extent of any insurance coverage providing benefits or coverage to [defendant]."

While still in open court, Ellis Hospital indicated that it had opted to pay plaintiffs $1,000,000 and assign its contractual rights, rather than pay $2,000,000, and plaintiffs signed a general release of all claims against the hospital that same day. The release acknowledged the assignment to plaintiffs of the hospital's indemnification rights against defendant and that the assignment would "be enforced solely against [defendant] and/or any liability insurance policy which provided benefits to [defen-

dant]." In addition, although defendant was not a party to the underlying action, the release also recited that defendant was released from any and all claims that plaintiffs "ever had, now have or may have, from the beginning of the world to the day of the date of these presents," arising out of the alleged malpractice.

Plaintiffs, as assignees of Ellis Hospital, then commenced the instant action seeking common-law and contractual indemnification for the $1,000,000 paid by the hospital to settle the underlying action. Defendant's insurance carrier disclaimed coverage on the ground that plaintiffs had waived any and all claims against defendant and, thus, defendant cannot become legally obligated on plaintiffs' claims in this action. Following joinder of issue, defendant moved for summary judgment dismissing the complaint and plaintiffs cross-moved for summary judgment, asserting that they were entitled to common-law indemnification from defendant. Supreme Court granted defendant's motion and dismissed the complaint on the ground that plaintiffs' claims were barred by the general release. The court also denied plaintiffs' subsequent motion to renew and reargue. Plaintiffs appeal from both the order dismissing the complaint and the order denying their motion to renew.

We disagree with Supreme Court's finding that the language of the release is unambiguous such that it bars the claim for indemnification which was clearly intended to be assigned to plaintiffs. The release document itself is only two pages. On the first page, plaintiffs unequivocally memorialize their intention to take by assignment, as part of the consideration for the release of Ellis Hospital, the latter's claim for indemnification against defendant. As the release recites, this indemnification claim arises out of a separate written agreement between Ellis Hospital and defendant. Plaintiffs' intention to take this claim by assignment is further reflected in another paragraph of the release which begins on the bottom of the first page and continues onto the second. In this ensuing paragraph, plaintiffs agree that this assigned claim "shall be enforced solely" against defendant and/or its liability carrier. At this juncture, namely, halfway through this relatively short document, plaintiffs have articulated with exquisite detail their intention to release Ellis Hospital based upon the payment of $1,000,000 *and* the assignment of its indemnification claim against defendant.

Admittedly, in this second paragraph, which reflects the extent to which this assigned claim shall be pursued, plaintiffs then purport to release and discharge both Ellis Hospital and defendant from "all" claims by the use of "standardized, even

ritualistic, language" (*Mangini v McClurg*, 24 NY2d 556, 562 [1969]) typically contained in preprinted releases. This patent ambiguity is further compounded by the concluding phrase of this paragraph, the final words of which state that the causes of action being released are more particularly set forth in a lawsuit by plaintiffs against Ellis Hospital and *defendant*. The summons and complaint in that earlier malpractice action are contained in the record in this case and clearly reflect that defendant was *never* a party to that earlier action.

Thus, this document contains several glaring, irreconcilable ambiguities. Notwithstanding the fact that the bulk of the document recites the terms and conditions under which an indemnification claim against defendant shall be assigned, it also purports to release defendant and Ellis Hospital from "all" causes of action. Since courts will only enforce the terms of a release when they are clear and unambiguous (*see J & A Bayly Constr. Co. v Village of Castleton-on-Hudson*, 248 AD2d 766, 767 [1998]), given these inherent, unavoidable ambiguities within the four corners of this release, resort to parol evidence is required (*see Doldan v Fenner*, 309 AD2d 1274, 1275-1276 [2003] [conflict between reservation of rights in release and release of all claims required resort to extrinsic evidence]; *compare Rubycz-Boyar v Mondragon*, 15 AD3d 811, 812 [2005], *lv denied* 5 NY3d 703 [2005] [release document contained no reference to context of dispute]). Indeed, this is a road this Court has traveled before. In rejecting the use of identical "boilerplate" language in an ambiguous release, this Court decided to examine the context in which the release was given and found that resort to extrinsic evidence was required to divine the parties' true intent (*see Green v Lake Placid 1980 Olympic Games*, 147 AD2d 860, 861-862 [1989]).

Turning to parol evidence, we find more than ample such evidence in the record to confirm the parties' true intentions. At that appearance in open court in the earlier action, plaintiffs, Ellis Hospital and Pasquariello were represented by counsel and a formal stipulation of settlement was placed on the record as follows:

"ATTY. SANTOLA: Your Honor, the Plaintiffs Thomas P. Caruso and his wife Kim B. Caruso have agreed to settle and discontinue all claims against the defendants, Ellis Hospital and Alex A. Pasquariello, M.D. arising out of the medical care and treatment sought by Thomas P. Caruso at the Ellis Hospital Emergency Room Department on July 27, 2001, where the defendant Alex A. Pasquariello, M.D. acting as physician in the emergency department examined and treated Mr. Caruso, and we are settling this claim upon the following terms and conditions:

"1. The Plaintiffs settle all claims for losses incurred for the total sum of $5 million.

"2. The Plaintiffs will provide a general release and stipulation of discontinuance of this action to Alex A. Pasquariello, M.D. on the payment by him or on his behalf the sum of $3 million.

"3. The Plaintiffs will provide a general release and stipulation of discontinuance of this action to Ellis Hospital upon the payment by or on behalf of Ellis Hospital the sum of $2 million in cash, or in the alternative, and at the election of Ellis Hospital, the payment by or on behalf of Ellis Hospital the sum of $1 million in cash, and an assignment of its rights for common law and/or contractual indemnification for the losses or costs it incurred in settlement of the Plaintiff[s'] claim herein, which it has or may have against Northeast Emergency Medical Associates, P.C., including, but not exclusive of rights arising out of an agreement entered into by and between Ellis Hospital and Northeast Emergency Medical Associates, P.C. . . .

"4. Plaintiffs agree that any claim arising out of an assignment given to them by Ellis Hospital, as referred to here and above, shall be enforced solely against the entity of Northeast Emergency Medical Associates, P.C. Said claim shall be limited to the extent of any insurance coverage providing benefits or coverage to Northeast Emergency Medical Associates, P.C. for any claim which arises or may arise directly or indirectly out of the medical care and treatment rendered to Thomas Caruso at the Ellis Hospital Emergency Department on July 27, 2001. Any such action or proceeding shall not be brought in the name of Ellis Hospital."

Supreme Court, in a surfeit of caution, then engaged in the following colloquy with Caruso, individually:

"THE COURT: Why don't you tell me what you think is going to happen?

"MR. CARUSO: That I'm going to settle this today.

"THE COURT: For how much?

"MR. CARUSO: Five million.

"THE COURT: And how much are you going to be paid in cash?

"MR. CARUSO: One million.

"THE COURT: You're going to get three million from the Doctor.

"MR. CARUSO: Okay.

"THE COURT: And you're going to get a million from Ellis Hospital.

"MR. CARUSO: Okay.

"THE COURT: *And then you're going to get a right to sue somebody else.*

"MR. CARUSO: Thank you. What about my eyesight back; I can't get that?

"THE COURT: I can't do anything about that, but do you understand that that's what you're actually getting?

"MR. CARUSO: Yes.

"THE COURT: And then in the event, in that other lawsuit, there is no money or there's a determination that they're not obliged to indemnify Ellis Hospital, all you're going to get is $4 million.

"MR. CARUSO: Okay.

"THE COURT: Is that a fair description of the stipulation?

"ATTY. SANTOLA: Yes, Judge.

"MR. CARUSO: Yes.

"MRS. CARUSO: Yes.

"THE COURT: Do you have any questions that you want to ask me, Mr. Caruso, about what's happening today?

"MR. CARUSO: I think we said it all here today; not really.

"THE COURT: Mrs. Caruso, how about you?

"MRS. CARUSO: No. I don't have any questions.

"THE COURT: Is counsel satisfied with the record as it has been developed?

"ATTY. SANTOLA: Yes, Judge.

"ATTY. JURELLER: Yes, Your Honor.

"ATTY. PHELAN: Yes.

"THE COURT: I'll mark the case settled" (emphasis added).

Where, as here, the true intent of the parties was painstakingly set forth in an elaborate stipulation of settlement, it should not be defeated by an ambiguous release, the legal effect of which can only be determined by reference to evidence outside the document itself. A fair reading of the context of the release, as set forth both in the general release itself and the open-court stipulation of settlement, can only support the conclusion that plaintiffs intended to preserve the indemnification claim against defendant.* A contrary conclusion is an injustice to plaintiffs

---

* The dissent's reference to the deposition testimony of defendant's insurance representative as indicating that "the release was designed to limit the assignment to defendant's insurance policy" is an incorrect characterization of her testimony. In actuality, she testified that the release "was suppose [*sic*]

and an unintended windfall to defendant. Under these circumstances, a clear question of fact exists sufficient to defeat defendant's motion for summary judgment (*see Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 290-291 [1973]; *Green v Lake Placid 1980 Olympic Games*, 147 AD2d at 862).

As a final matter, to the extent that plaintiffs appeal from the order denying their motion to renew, they have failed to raise any arguments regarding this denial and, thus, any claims concerning this order have been abandoned (*see Dunn v Northgate Ford, Inc.*, 16 AD3d 875, 876 n 2 [2005]).

Spain and Malone Jr., JJ., concur.

Kavanagh, J. (dissenting). It is well settled that a general release "is a jural act of high significance . . . It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice" (*Mangini v McClurg*, 24 NY2d 556, 563 [1969]; *see Booth v 3669 Delaware*, 92 NY2d 934, 935 [1998]). Thus, when "the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed" (*Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603, 616 [1994] [internal quotation marks and citation omitted]; *see Rubycz-Boyar v Mondragon*, 15 AD3d 811, 812 [2005], *lv denied* 5 NY3d 703 [2005]; *J & A Bayly Constr. Co. v Village of Castleton-on-Hudson*, 248 AD2d 766, 767 [1998]). Of course, " '[t]he meaning and coverage of a general release necessarily depends upon the controversy being settled and upon the purpose for which the release was given' " (*Kaminsky v Gamache*, 298 AD2d 361, 362 [2002] [citation omitted]; *accord Meyer v Fanelli*, 266 AD2d 361, 361-362 [1999]; *see Smith v AJ Contr. Co.*, 277 AD2d 305, 306 [2000]). A general release, therefore, may be "avoided with respect to uncontemplated transactions despite the generality of the language in the release form" (*Mangini v McClurg*, 24 NY2d at 562; *see Green v Lake Placid 1980 Olympic Games*, 147 AD2d 860, 862 [1989]). Nevertheless, absent fraud, duress or illegality, it is the releasor who "must sustain the burden of persuasion if he [or she] is to establish that the general language of the release, valid on its face and properly executed, is to be limited because of a mutual mistake, or otherwise does not represent the intent of the par-

to specifically state that any assignment is only to the *extent* of their policy" (emphasis added). Because plaintiffs specifically retained the right to assert the assigned indemnification claim against defendant *directly*, those cases cited by the dissent which implicate the rule that a release of a tortfeasor also results in the release of the tortfeasor's insurer are simply inapplicable here.

ties" (*Mangini v McClurg*, 24 NY2d at 563; *see Hack v United Capital Corp.*, 247 AD2d 300, 301-302 [1998]; *Calavano v New York City Health & Hosps. Corp.*, 246 AD2d 317, 319 [1998]).

It is our view that plaintiffs, as the releasors, have not met their burden here. The general release acknowledged that plaintiffs received an assignment from Ellis Hospital of a claim for indemnification that was to be enforced against defendant *or defendant's insurer*. The release then unambiguously discharged both Ellis Hospital and defendant—but not defendant's insurer—from "all" claims "in law or in equity" that "they ever had, now have or may have" arising out of the alleged medical malpractice. This language unequivocally released defendant from its liability for any and all claims of plaintiffs, including the indemnification claim asserted herein, while attempting to preserve plaintiffs' right to pursue an indemnification claim against defendant's insurer.

Indeed, plaintiffs concede that the general language of the release seemingly embraces their indemnification claim against defendant. Nevertheless, in the face of defendant's insurer disclaiming coverage after plaintiffs released defendant from liability, they assert that this language is not controlling when read in the context of other portions of the release. Contrary to plaintiffs' argument, however, there is no language in the release limiting the types of claims discharged, distinguishing between claims asserted by plaintiffs on their own behalf and those asserted in their role as assignees of Ellis Hospital, or otherwise excepting plaintiffs' right to sue for indemnification as assignees (*see Rubycz-Boyar v Mondragon*, 15 AD3d at 812). Furthermore, the release signed by plaintiffs cannot be equated to one in which general language has been held not to bar uncontemplated or unmentioned transactions (*see Mangini v McClurg*, 24 NY2d at 568-569; *Green v Lake Placid 1980 Olympic Games*, 147 AD2d at 862). Rather, the release at issue here expressly acknowledged the very claim that plaintiffs now seek to assert and plaintiffs nonetheless failed—despite the assistance of counsel—to limit the scope of the release with respect to defendant (*see Rubycz-Boyar v Mondragon*, 15 AD3d at 812).

While plaintiffs further assert that the circumstances of the negotiated settlement demonstrate that it does not bar their indemnification claim, we agree with defendant that the context of the release, as set forth both in the general release itself and the open-court stipulation of settlement, supports a conclusion that plaintiffs intended to release all claims against defendant. Inasmuch as defendant was not a party to

the underlying action, the inclusion of defendant in the general release cannot be characterized as merely inadvertent. In that regard, when plaintiffs' counsel set forth the stipulation in open court, he expressed plaintiffs' intent that the indemnification claim "be limited to the extent of any insurance coverage providing benefits or coverage to [defendant]." The written release—first acknowledging the assignment of Ellis Hospital's claim against defendant and its insurer and then releasing only the hospital and defendant—is consistent with this stated intent that any recovery be limited to defendant's insurance coverage. Thus, it cannot be said that the open-court stipulation renders plaintiffs' discharge of defendant in any way ambiguous.

We cannot agree with the majority's characterization of the open court stipulation as parol evidence. Rather, the open court stipulation constitutes the circumstances under which the parties entered into the settlement agreement—including the written general release—and which we necessarily consider in determining the meaning of the general release (*see e.g. Kaminsky v Gamache*, 298 AD2d at 362; *Smith v AJ Contr. Co.*, 277 AD2d at 306; *Green v Lake Placid 1980 Olympic Games*, 147 AD2d at 862). We find nothing in the open court settlement that renders the written general release ambiguous. To the contrary, the open court stipulation reflects only plaintiff Thomas P. Caruso's belief that he was "going to get a right to sue somebody else"—without clarifying whether "somebody else" referred to defendant or its insurer—and the agreement of plaintiffs' counsel that any recovery by plaintiffs would be limited to defendant's "insurance coverage." In that regard, "it is well established that 'when the meaning of [a] . . . contract is plain and clear . . . [it is] entitled to [be] enforced according to its terms . . . [and] not to be subverted by straining to find an ambiguity which otherwise might not be thought to exist' " (*Uribe v Merchants Bank of N.Y.*, 91 NY2d 336, 341 [1998] [citation omitted]).

A "look to *extrinsic* evidence to determine the parties' intent" (*Rubycz-Boyar v Mondragon*, 15 AD3d at 812 [emphasis added]; *see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990])—the deposition testimony of the insurance representative of both physician Alex Pasquariello and defendant—indicates that the language of the release was designed to limit the assignment to defendant's insurance policy such that plaintiffs would have no recourse against defendant or Ellis Hospital if insurance cover-

age were to fail.\* In similar contexts involving attempts to limit recovery to insurance coverage, however, this Court has repeatedly stated that "a release discharging an insured from all liability relieves the insurer from the duty of indemnification because it effectively eliminates any factual or legal grounds on which the duty to indemnify may be based" (*McDonough v Dryden Mut. Ins. Co.*, 276 AD2d 817, 818 [2000]; *see Westervelt v Dryden Mut. Ins. Co.*, 252 AD2d 877, 879 [1998]; *Erdman v Eagle Ins. Co.*, 239 AD2d 847, 849 [1997], *appeal dismissed and lv denied* 90 NY2d 926 [1997]; *see also Westchester Fire Ins. Co. v Utica First Ins. Co.*, 40 AD3d 978, 980 [2007]). In any event, "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the part[ies] who prepared it"—i.e., plaintiffs—and, thus, even if an ambiguity was found, it would necessarily be resolved in defendant's favor (*Jacobson v Sassower*, 66 NY2d 991, 993 [1985]; *see 67 Wall St. Co. v Franklin Natl. Bank*, 37 NY2d 245, 249 [1975]).

In sum, because the general release unequivocally discharged defendant from any further liability, thereby precluding any claims against defendant's insurer, it is our view that Supreme Court properly dismissed the complaint (*see e.g. Rubycz-Boyar v Mondragon*, 15 AD3d at 812-813; *L & K Holding Corp. v Tropical Aquarium at Hicksville*, 192 AD2d 643, 645 [1993]).

Rose, J., concurs.

Ordered that the order entered June 15, 2007 is affirmed, without costs.

Ordered that the order entered March 13, 2007 is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion for summary judgment; motion denied; and, as so modified, affirmed.

---

\* While the majority takes issue with our characterization of this testimony, it is our view that the majority's interpretation fails to recognize the following statement of Supreme Court to Caruso: "And then in the event, in that other lawsuit, there is no money or there's a determination that they're not obligated to indemnify Ellis Hospital, all you're going to get is $4 million." Under any characterization, Supreme Court's comments clearly illustrate the understanding that if the right to indemnify does not exist, plaintiffs' right of recovery is limited and, in our view, the majority's interpretation of this testimony and the statement of plaintiffs' counsel regarding the limited extent of coverage is inconsistent with the court's statement.