Putnam v Kibler (2022 NY Slip Op 06574)

Putnam v Kibler

2022 NY Slip Op 06574

Decided on November 18, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CENTRA, PERADOTTO, AND NEMOYER, JJ.

607 CA 21-01789

[*1]ASHLEY C. PUTNAM, PLAINTIFF-RESPONDENT,
v
MICHAEL J. KIBLER, JASON D. KIBLER, DEFENDANTS, AND ANDREW R. GNIAZDOWSKI, DEFENDANT-APPELLANT. 

LAW OFFICES OF JOHN TROP, ROCHESTER (MATTHEW T. MURRAY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
DIFILIPPO, FLAHERTY & STEINHAUS, PLLC, EAST AURORA (ROBERT D. STEINHAUS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Catherine R. Nugent Panepinto, J.), entered December 3, 2021. The order denied the motion of defendant Andrew R. Gniazdowski to dismiss plaintiff's complaint and any cross claims against him. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, and the complaint and any cross claims are dismissed against defendant Andrew R. Gniazdowski.
Memorandum: Plaintiff was riding as a passenger on a snowmobile operated by defendant Jason D. Kibler (Kibler) and owned by defendant Michael J. Kibler (collectively, Kiblers) when a snowmobile operated by defendant Andrew R. Gniazdowski (defendant), who was traveling on the same trail in the opposite direction, struck the Kiblers' snowmobile head-on. All three individuals who had been snowmobiling sustained injuries and were transported to the hospital. Kibler, who reported to the police that he was operating the snowmobile as far to the right as possible and was not going fast, was not issued a ticket. Conversely, defendant, who could not recall whether he was on the correct side of the trail as he approached a blind spot on a hill just before the collision, was issued a ticket for reckless operation.
Plaintiff and Kibler both retained the same law firm to represent them. The attorney at the law firm thereafter negotiated settlements, which Kibler accepted. The attorney then informed plaintiff that defendant, through his insurance carrier, had offered to settle any personal injury action against him for $25,000. Plaintiff subsequently signed a release that was witnessed and notarized by the attorney. A few days later, the law firm emailed a copy of the executed release to the insurer with a request that the insurer send a settlement check in the amount of $25,000 and payable to plaintiff to the law firm's office. According to the insurer's senior claims service specialist, the settlement check was issued about one week later and mailed to the law firm.
Plaintiff subsequently commenced the present personal injury action alleging that she suffered injuries as a result of the negligence or recklessness of defendant and the Kiblers. Defendant moved pursuant to CPLR 3211 (a) (5) to dismiss plaintiff's complaint and any cross claims against him on the basis of the release. Supreme Court denied the motion without explanation. Defendant contends on appeal that the court erred in denying the motion because he met his initial burden of establishing that he was released from the claims now brought against him in plaintiff's action and plaintiff failed to meet her burden in opposition to the motion. We agree, and we therefore reverse.
"Generally, a valid release constitutes a complete bar to an action on a claim which is the [*2]subject of the release . . . If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks omitted]). "A release 'should never be converted into a starting point for . . . litigation except under circumstances and under rules which would render any other result a grave injustice' " (id., quoting Mangini v McClurg, 24 NY2d 556, 563 [1969]). Thus, "[a] release may be invalidated . . . for any of 'the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake' " (id., quoting Mangini, 24 NY2d at 563). "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release' " (id., quoting Fleming v Ponziani, 24 NY2d 105, 111 [1969]).
"In assessing a motion to dismiss on the ground that an action may not be maintained because of a release (see CPLR 3211 [a] [5]), the allegations in the complaint are to be treated as true, all inferences that reasonably flow therefrom are to be resolved in [the plaintiff's] favor, and where, as here, the plaintiff has submitted an affidavit in opposition to the motion, it is to be construed in the same favorable light" (Armenta v Preston, 196 AD3d 1197, 1197 [4th Dept 2021] [internal quotation marks omitted]; see Fimbel v Vasquez, 163 AD3d 1120, 1121 [3d Dept 2018]; Sacchetti-Virga v Bonilla, 158 AD3d 783, 784 [2d Dept 2018]). "At the same time, however, allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration" (Simkin v Blank, 19 NY3d 46, 52 [2012] [internal quotation marks omitted]).
Here, as a preliminary matter, plaintiff asserts that defendant waived his defense based on the release by failing to raise it in his answer (see CPLR 3211 [e]). Although we may consider that contention despite the fact that it is raised for the first time on appeal (see Edwards v Siegel, Kelleher & Kahn, 26 AD3d 789, 790 [4th Dept 2006]; Oram v Capone, 206 AD2d 839, 840 [4th Dept 1994]), we agree with defendant that plaintiff's assertion is devoid of merit. The record establishes that defendant asserted in one of his affirmative defenses that "plaintiff has provided a signed release to this answering defendant, such that this action is barred by the release." Defendant further asserted in the answer that he was "entitled to dismissal of the complaint and any cross-claims by virtue of the release" and then demanded dismissal "based upon the release running in favor of this answering defendant."
On the merits, we conclude that defendant met his initial burden of establishing that he was released from any claims by submitting the release executed by plaintiff (see Armenta, 196 AD3d at 1197; Cain-Henry v Shot, 194 AD3d 1465, 1466 [4th Dept 2021]; Ford v Phillips, 121 AD3d 1232, 1233 [3d Dept 2014]). As defendant contends, "the language of [the] release is clear and unambiguous" and plaintiff's action against defendant to recover for personal injuries is barred (Booth v 3669 Delaware, 92 NY2d 934, 935 [1998]; see Carew v Baker, 175 AD3d 1379, 1381 [2d Dept 2019]; Kulkarni v Arredondo & Co., LLC, 151 AD3d 705, 706 [2d Dept 2017]).
"[A] general release is governed by principles of contract law" (Mangini, 24 NY2d at 562). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties" (Brad H. v City of New York, 17 NY3d 180, 185 [2011]). "To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole" (id.). An agreement "is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]).
The release in this case contains preliminary broad language releasing defendant from "any and all claims, demands, damages, costs, expenses, loss of services, actions, and causes of action whatsoever . . . arising from any act or occurrence up to the present time and particularly on account of BODILY INJURY, loss or damages of any kind" that plaintiff sustained or may sustain as a consequence of the accident, which is later narrowed by the language stating that the "agreement only releases the parties named above with respect to BODILY INJURY damages arising out of the accident" and that the "agreement does not waive any other party or parties from making any other claims that are not discharged or settled by this release" (see Lexington [*3]Ins. Co. v Combustion Eng'g, 264 AD2d 319, 321-322 [1st Dept 1999]). It is well established that where the language of a release is "limited to only particular claims, demands, or obligations, the instrument will be operative as to those matters alone, and will not release other claims, demands or obligations" (Dury v Dunadee, 52 AD2d 206, 209 [4th Dept 1976] [internal quotation marks omitted]; see Lexington Ins. Co., 264 AD2d at 322).
Even so, the release of defendant for any "bodily injury damages" arising from the accident clearly and unambiguously encompasses plaintiff's action against defendant to recover for personal injuries sustained in the accident (see Ford, 121 AD3d at 1233; Galatioto v Hanes, 224 AD2d 923, 923 [4th Dept 1996]; DeQuatro v Zhen Yu Li, 211 AD2d 609, 609-610 [2d Dept 1995]). While plaintiff attempts to manufacture ambiguity in the phrase "bodily injury damages" by asserting that the release does not "define what those damages are" and by questioning whether medical expenses, pain and suffering, and wage loss would be included therein, that attempt is unavailing inasmuch as the plain meaning of damages for "bodily injury" refers to personal injury damages, including the items listed by plaintiff (see Le Blanc v Allstate Ins. Co., 279 AD2d 876, 877 [3d Dept 2001]; see also CPLR 4111 [e]). Additionally, the inclusion of some isolated legalese in the release does not render the release ambiguous where, as here, the release is readily understandable when appropriately considered as a whole (see Brad H., 17 NY3d at 185); nor is the document ambiguous on the ground that it releases parties other than defendant, such as the insurer and its affiliates (see e.g. Ford, 121 AD3d at 1232-1233).
The burden thus shifted to plaintiff " 'to show that there has been fraud, duress or some other fact which will be sufficient to void the release' " (Centro Empresarial Cempresa S.A., 17 NY3d at 276; see Armenta, 196 AD3d at 1197). Plaintiff failed to meet that burden.
First, we agree with defendant that plaintiff "cannot avoid the effect of th[e] 'plain and unambiguous' release [merely by stating] that [she] did not understand its terms" (Goode v Drew Bldg. Supply, 266 AD2d 925, 925 [4th Dept 1999]; see Dempski v State Farm Mut. Auto. Ins. Co., 291 AD2d 911, 911 [4th Dept 2002], appeal dismissed and lv denied 98 NY2d 661 [2002]; DeQuatro, 211 AD2d at 610; see also Galster Rd. Props., LLC v Penske Truck Leasing Co., L.P., 195 AD3d 1502, 1502 [4th Dept 2021]). Here, in her affidavit, plaintiff simply averred in conclusory fashion that, although she had the opportunity to read the release before signing it, she "did not fully understand what it meant other than [she] was to receive $25,000[ ]." However, inasmuch as plaintiff entered into a plain and unambiguous contract, she "cannot avoid it by [merely] stating that [she] erred in understanding its terms," and "[r]elief from a release may not be granted on the basis of vague or conclusory allegations of error" such as those put forth by plaintiff (Cortino v London Terrace Gardens, 170 AD2d 305, 306 [1st Dept 1991], lv denied 78 NY2d 853 [1991]). Because her claimed lack of understanding is based entirely on conclusory allegations, plaintiff, who was nearly 19 years old when she signed the release, "has failed to show that [she] lacked the competence to understand the nature and meaning of the release" (Galatioto, 224 AD2d at 924; see Verstreate v Cohen, 242 AD2d 862, 862 [4th Dept 1997]). We conclude that, at best, plaintiff established "a mere unilateral mistake . . . with respect to the meaning and effect of the release. Such a mistake does not constitute an adequate basis for invalidating a clear, unambiguous and validly executed release" (Booth v 3669 Del., 242 AD2d 921, 922 [4th Dept 1997], affd 92 NY2d 934 [1998]; see Phillips v Savage, 159 AD3d 1581, 1581 [4th Dept 2018]).
Next, even assuming, arguendo, that a lawyer's conflict of interest could constitute a ground upon which to set aside a release as "not 'fairly and knowingly made' " (Bronson v Hansel, 16 NY3d 850, 851 [2011]; see Mangini, 24 NY2d at 567), we agree with defendant that plaintiff's claim that her attorney necessarily had a conflict of interest in simultaneously representing plaintiff and Kibler at the time of the release—which constitutes a " 'bare legal conclusion[]' " not entitled to favorable consideration—is insufficient to raise a question of fact in that regard (Simkin, 19 NY3d at 52; cf. Sacchetti-Virga, 158 AD3d at 784). With respect to a conflict of interest arising from representation of multiple clients, the Rules of Professional Conduct provide, in relevant part, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [a] [1]). Here, the information available immediately following the accident was that plaintiff and Kibler had been riding together on a snowmobile on the right side of a trail when they were struck head-on by a snowmobile operated by defendant, who could not recall whether he was on the correct side [*4]of the trail and received a ticket for reckless operation. In light of that information, a reasonable attorney would conclude that, at the time of the settlement negotiations, plaintiff and Kibler did not have differing interests inasmuch as they were both injured by the negligence of defendant (see Benevolent & Protective Order of Elks of United States of Am. v Creative Comfort Sys., Inc., 175 AD3d 887, 889 [4th Dept 2019]; Saint Annes Dev. Co. v Batista, 165 AD3d 997, 998 [2d Dept 2018]). Thus, there is no basis to deny defendant's motion on the ground that a conflict of interest rendered the release not fairly and knowingly made.
We also agree with defendant that there is no factual or legal basis for setting aside the release for lack of consideration. With respect to the facts, plaintiff incorrectly represents on appeal that "the record is devoid of evidentiary proof in admissible form to support" defendant's suggestion that the settlement amount of $25,000 was forwarded to the law firm. In reply to plaintiff's claim made in opposition to the motion that she never "received" any settlement money, defendant submitted the affidavit of the insurer's senior claims service specialist, who handled plaintiff's claim and averred that a check in the amount of $25,000 and payable to plaintiff and the law firm was mailed to the law firm. An affidavit of an individual with personal knowledge of the facts constitutes evidentiary proof in admissible form (see Desola v Mads, Inc., 213 AD2d 445, 446 [2d Dept 1995]). Thus, to the extent that plaintiff claimed as a factual matter that the settlement amount was never paid by defendant and the insurer, that claim is "flatly contradicted by documentary evidence" and is not entitled to any favorable consideration (Simkin, 19 NY3d at 52 [internal quotation marks omitted]). As a legal matter, plaintiff's claim that she "never received the compensation called for in the release," while perhaps giving rise to a breach of contract claim, is not a valid basis upon which to set aside the release itself (see General Obligations Law § 15-303; Icdia Corp. v Visaggi, 135 AD3d 820, 823 [2d Dept 2016]; Sampson v Savoie, 90 AD3d 1382, 1383 [3d Dept 2011]; Angel v Bank of Tokyo-Mitsubishi, Ltd., 39 AD3d 368, 369 [1st Dept 2007]; Goode, 266 AD2d at 925).
Finally, we agree with defendant that there are no other grounds upon which the release could be invalidated. Based on the foregoing, we reverse the order, grant the motion, and dismiss the complaint and any cross claims against defendant.
Entered: November 18, 2022
Ann Dillon Flynn
Clerk of the Court