Marcella v Glowacki (2024 NY Slip Op 06094)

Marcella v Glowacki

2024 NY Slip Op 06094

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

CV-23-1622
[*1]Tina K. Marcella, Appellant,
v
Olga Glowacki, Defendant, and Lauren Magarino, Defendant-and Third-Party Plaintiff-Respondent; Alexander Allias, Third-Party Defendant-Respondent.

Calendar Date:October 7, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and McShan, JJ.

Wegerski Law Firm, Brewerton (John P. Wegerski III of counsel), for appellant.
Kenney Shelton Liptak Nowak LLP, Buffalo (Daniel K. Cartwright of counsel), for defendant and third-party plaintiff-respondent.
The Law Offices of Jennifer S. Adams, Williamsville (Paul G. Hanson of counsel), for third-party defendant-respondent.

Lynch, J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered July 18, 2023 in Chenango County, which, among other things, granted defendant Lauren Magarino's motion to dismiss the complaint against her.
In August 2020, plaintiff sustained serious injuries when she was ejected from the passenger seat of an ATV while riding in a field on property owned by defendant Olga Glowacki located in Chenango County. The ATV was driven by defendant Lauren Magarino and owned by third-party defendant Alexander Allias. At the time of the accident, Allias carried an insurance policy through Progressive Insurance Company (hereinafter Progressive) that covered claims for bodily injury arising from use of the ATV up to a policy limit of $25,000. In April 2021, plaintiff signed a "Full Release of All Claims and Demands" prepared by Progressive that released both Allias and Magarino from liability for the accident in consideration of $25,000, paid by Progressive.
In December 2021, plaintiff commenced this action seeking damages from both Glowacki and Magarino. Glowacki and Magarino separately joined issue, and Magarino commenced a third-party action against Allias seeking indemnification for any judgment entered against her. Allias moved to dismiss the third-party action on the basis of the April 2021 release (see CPLR 3211 [a] [5]; General Obligations Law § 15-108 [b]), and Magarino subsequently moved to dismiss plaintiff's complaint on the same ground.[FN1]
Plaintiff opposed the motions and cross-moved for an order setting aside the release and compelling the parties to accept an amended release naming only Allias. In support, plaintiff submitted an affirmation from her attorney who explained that, during his investigation into the accident, he learned that Magarino carried an automobile liability insurance policy from Hanover Insurance Group (hereinafter Hanover) that covered claims for bodily injury up to a policy limit of $500,000. According to plaintiff's attorney, when he contacted representatives from both Hanover and Progressive regarding a potential settlement, only Progressive expressed a willingness to negotiate. Plaintiff's attorney maintained that email correspondence between the parties' attorneys and insurance adjustors, as well as the vast discrepancy in the insurance policy amounts, evinced an intent to release only Allias from liability and that the inclusion of Magarino in the written agreement was a mutual mistake. In opposition to the cross-motion and in further support of her motion to dismiss the complaint, Magarino submitted an affidavit from Krystal Graham — a claims representative for Progressive — explaining that because Magarino "was operating the ATV in question with the permission and consent of . . . Allias, it was the position of Progressive that she was . . . an insured under the applicable policy" and that Graham negotiated the settlement on behalf of both individuals.
Supreme Court granted Magarino's and Allias' motions[*2], and denied plaintiff's cross-motion. The court found that plaintiff "signed a valid release of claims that released liability of both A[l]lias and Magarino" and that, at most, plaintiff made a unilateral mistake regarding the scope of the settlement, which was insufficient to void the clear and unambiguous terms of the release. Plaintiff appeals.
Emphasizing that all parties to the dispute are New Jersey residents, the release was signed in New Jersey, and the $25,000 worth of consideration was paid under an insurance policy that was underwritten by a New Jersey corporation, plaintiff asserts that Supreme Court should have undertaken a choice of law analysis and, upon doing so, should have applied New Jersey law, which permits the rescission of this type of contract based upon a unilateral mistake (see Hamel v Allstate Ins. Co., 233 NJ Super 502, 506, 559 A2d 455, 457 [NJ App Div 1989]). This argument was not preserved for review, as it is being raised for the first time on appeal (see Atlantic Mut. Ins. Co. v Goglia, 44 AD3d 558, 562 [1st Dept 2007]; State Farm Fire & Cas. Co. v Dayco Prods., Inc., 19 AD3d 923, 926 [3d Dept 2005]). Notably, plaintiff's cross-motion expressly cited only New York law in support of setting aside the release and Supreme Court was not required to undertake a choice of law analysis on a sua sponte basis. The case plaintiff cites in her reply brief for the proposition that a choice of law analysis was "mandatory" and could be raised for the first time on appeal does not support the assertion (see e.g. J. Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 226-227 [1975], cert denied 423 US 866 [1975]).
Applying New York law, we agree with Supreme Court that there is no valid basis to set aside the release. General Obligations Law § 15-108 (d) provides that "[a] release or a covenant not to sue between a plaintiff . . . and a person who is liable or claimed to be liable in tort shall" be considered binding if "(1) the plaintiff . . . receives, as part of the agreement, monetary consideration greater than one dollar; (2) the release . . . completely or substantially terminates the dispute between the plaintiff . . . and the person who was claimed to be liable; and (3) such release . . . is provided prior to entry of judgment." Such a release also discharges other tortfeasors from liability for injury if "its terms expressly so provide" (General Obligations Law § 15-108 [a]).
"Fundamentally, releases are contracts to be interpreted in accordance with principles of contract law" (Zilinkas v Westinghouse Elec. Corp., 248 AD2d 777, 778-779 [3d Dept 1998] [citations omitted]). In that regard, "there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties" (Chimart Assoc. v Paul, 66 NY2d 570, 574 [1986] [internal quotation marks, brackets and citation omitted]), and where such an agreement is clear and unambiguous it "must be enforced according to the [*3]plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). Correspondingly, "a valid release [generally] constitutes a complete bar to an action on a claim which is the subject of the release" and "should never be converted into a starting point for litigation except under circumstances and under rules which would render any other result a grave injustice" (Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks, ellipsis and citations omitted]).
The party seeking to dismiss an action on the basis of a release has the initial burden to establish the existence of a valid and enforceable release of which he or she is a beneficiary (see CPLR 3211 [a] [5]; Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d at 276; Fleming v Ponziani, 24 NY2d 105, 112-113 [1969]; Prete v Tameres Dev. 1, LLC, 219 AD3d 1537, 1537-1538 [2d Dept 2023]). Upon doing so, the burden shifts to the plaintiff to establish a ground upon which the release may be set aside — i.e., due to "duress, illegality, fraud, or mutual mistake" (Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d at 276; see Mangini v McClurg, 24 NY2d 556, 563 [1969]; Putnam v Kibler, 210 AD3d 1458, 1462 [4th Dept 2022]; Young v Williams, 47 AD3d 1084, 1086 [3d Dept 2008]).[FN2]
Magarino satisfied her initial burden by providing a copy of the executed release, which states, in clear and unambiguous language, that "I, [plaintiff], for and in consideration of the sum of [$25,000], the receipt whereof is hereby acknowledged, [do] hereby . . . release, acquit and forever discharge Lauren Magarino and Alexander Allias
. . . from any and all claims" arising from the ATV accident that occurred on August 14, 2020 (emphasis added) (see Putnam v Kibler, 210 AD3d at 1460). The release was made "in full compromise of a doubtful and disputed claim as to both questions of liability and as to the nature and extent of the damages," and contains capitalized and bolded language confirming that the "undersigned has read the foregoing release and fully understands it" (formatting omitted). Plaintiff signed the release on April 8, 2021 and an invoice shows that Progressive paid plaintiff $25,000 on April 18, 2021. As such, the burden shifted to plaintiff to establish a basis upon which to set aside the release, at least as to Magarino (see Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d at 276).
We are not persuaded by plaintiff's contention that the release must be set aside as to Magarino since she did not contribute any funds to the settlement. As noted above, Graham confirmed that Progressive was treating Magarino as an insured given her understanding that Magarino was operating the ATV with Allias' permission. In these circumstances, we conclude that the release is valid as to Magarino even though she did not directly contribute any funds (see Giglio v NTIMP, Inc., 86 AD3d [*4]301, 312 [2d Dept 2011] [finding that a release was binding under General Obligations Law § 15-108 (a) as to both parties named therein even though the insurer of only one party paid the consideration]).
Plaintiff's argument that Supreme Court should have set aside the release due to a mutual mistake is also unavailing. To rescind a release based on mutual mistake, the "mistake must be so substantial that the resulting agreement does not represent a true meeting of the minds of the contracting parties" (Adalian v Stuyvesant Plaza, 288 AD2d 789, 791 [3d Dept 2001]; see Lakshmi Grovery & Gas, Inc. v GRJH, Inc., 138 AD3d 1290, 1292 [3d Dept 2016]). When the language of a release is unambiguous with regard to a particular claim, "the fact that [a plaintiff] may have intended something else is irrelevant, as a mere unilateral mistake with respect to the meaning and effect of the release does not constitute an adequate basis for invalidating it" (Stevens v Town of Chenango [Forks], 167 AD3d 1105, 1107 [3d Dept 2018] [internal quotation marks, brackets, ellipses and citations omitted]).
Given the express language of the release naming both Allias and Magarino as settling parties, coupled with the affidavit from Graham confirming that Progressive's intent was to settle the dispute on behalf of both individuals, plaintiff established — at most — a unilateral mistake on her own part, which is insufficient to support a claim of rescission (see Chimart Assoc. v Paul, 66 NY2d at 571; Matter of McLaughlin, 97 AD3d at 1052-1053; Angel v Bank of Tokyo-Mitsubishi, Ltd., 39 AD3d at 369).
We further find plaintiff's estoppel argument unavailing. Plaintiff maintains that Allias' verified answer to the third-party complaint, in which he raises an affirmative defense that Magarino was operating the ATV without consent, requires that we disregard Graham's explanation that Magarino was considered an insured under the Progressive policy because she was operating the ATV with consent. From that premise, plaintiff reasons that Progressive erred by including Magarino in the release and that there was a mutual mistake between the parties. The flaw in that reasoning is that the release was executed in April 2021 resolving, from Graham's perspective, all potential coverage issues. That Allias took a contrary litigation view in the answer filed in September 2022 does not warrant our rejection of the Graham affidavit. Nor does the email in which Hanover's attorney confirmed, subsequent to the execution of the release, that she would represent Magarino in the impending lawsuit establish a mutual mistake regarding the terms of the release by a party who was actually involved in the settlement discussions (see generally Carney v Carozza, 16 AD3d 867, 868 [3d Dept 2005]). Moreover, plaintiff's claim that inclusion of Magarino in the release was a scrivener's error disregards Progressive's expressed objective to resolve any coverage issues under its policy (see Stonebridge Capital, [*5]LLC v Nomura Intl. PLC, 68 AD3d 546, 548 [1st Dept 2009], lv dismissed 15 NY3d 735 [2010]; 27 Williston on Contracts § 70:93 [4th ed] ["(A) scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error; this permits a court acting in equity to reform an agreement"]). Plaintiff's assertion that she and her counsel "overlooked the language of the release" is also insufficient to support a claim of recission (see Morby v Di Siena Assoc., 291 AD2d 604, 605 [3d Dept 2002]).[FN3]
Plaintiff also challenges Magarino's ability to enforce the release under the "intent to benefit" rule which, in essence, provides that a third party who is not an intended beneficiary of an agreement does not have the right to enforce its terms (see Port Chester Elec. Const. Co. v Atlas, 40 NY2d 652, 655 [1976]). To the extent preserved, this argument also fails given Graham's explanation for including Magarino in the release (see Commissioner of the Dept. of Social Servs. of the City of N.Y. v New York-Presbyt. Hosp., 164 AD3d 93, 98 [1st Dept 2018], lv denied 33 NY3d 901 [2019]; compare Cerullo v Aetna Cas. & Sur. Co., 41 AD2d 1, 4 [4th Dept 1973]). We have examined plaintiff's remaining arguments and find them to be without merit.
Egan Jr., J.P., Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Magarino also successfully amended her answer to include an affirmative defense based upon the release.

Footnote 2: Plaintiff cites Wheeler v State of New York (286 App Div 310, 313 [3d Dept 1955]) for the proposition that a release may be voided upon a unilateral mistake in certain circumstances — i.e., where no consideration was given to obtain it. However, plaintiff was provided consideration in exchange for executing the release. Moreover, as noted by the Second Circuit in Middle E. Banking Co. v State St. Bank Intl. (821 F2d 897 [2d Cir 1987]), Wheeler concerned "a fundamentally different kind of mistake" — one "as to the very nature of the documents executed" (id. at 906). Such is not the case here. Consistent New York case law issued subsequent to Wheeler clearly holds that a unilateral mistake, standing alone and not induced by fraud, is not a valid basis to set aside a clear and unambiguous release (see Matter of McLaughlin, 97 AD3d 1051, 1053 [3d Dept 2012]; Angel v Bank of Tokyo-Mitsubishi, Ltd., 39 AD3d 368, 369 [1st Dept 2007]; see also Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V.,17 NY3d at 276; Mangini v McClurg, 24 NY2d at 563).

Footnote 3: Plaintiff argues in her reply brief that this Court should set aside the release based upon principles of equity to avoid an "unintended windfall to" Magarino. Having failed to make this argument in her main brief on appeal, it is not properly before us (see Sills v Moorings Prop., LLC, 218 AD3d 1075, 1080 [3d Dept 2013]). In any event, the case plaintiff cites in support of setting aside the release based upon principles of equity is materially distinguishable, as it concerned a release with "several glaring, irreconcilable ambiguities" not present here (Caruso v Northeast Emergency Med. Assoc., P.C., 54 AD3d 524, 527 [3d Dept 2008]).