Ivasyuk v Raglan (2021 NY Slip Op 04706)





Ivasyuk v Raglan


2021 NY Slip Op 04706


Decided on August 18, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 18, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2019-08974
 (Index No. 506615/17)

[*1]Roman Ivasyuk, et al., respondents,
v
Daniel Raglan, et al., defendants, M & I Construction & Renovation, Inc., appellant.


Hoffman Roth & Matlin, LLP, New York, NY (Joshua R. Hoffman of counsel), for appellant.
Bruce A. Newborough (Thomas Torto, New York, NY [Jason Levine], of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for personal injuries, etc., the defendant M & I Construction & Renovation, Inc., appeals from an order of the Supreme Court, Kings County (Francois A. Rivera, J.), dated June 21, 2019. The order, insofar as appealed from, denied that branch of that defendant's motion which was for summary judgment dismissing the complaint insofar as asserted against it.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the motion of the defendant M & I Construction & Renovation, Inc., which was for summary judgment dismissing the complaint insofar as asserted against it is granted.
On November 17, 2016, the plaintiff Roman Ivasyuk (hereinafter the injured plaintiff), an employee of nonparty Elmar Universal Electrical Systems Corp. (hereinafter Elmar), allegedly was injured while performing work at a property being renovated. While installing overhead wires, the injured plaintiff fell from a six-foot A-frame ladder, owned by Elmar.
The property owner, the defendant Daniel Raglan, initially hired the defendant Red Oak Renovation Corp. (hereinafter Red Oak) to act as a general contractor for the renovation project which encompassed the conversion of the property into a single-family residence. Prior to the subject accident, Raglan terminated Red Oak as the general contractor. Thereafter, Raglan exchanged emails with an employee of the defendant M & I Construction & Renovation, Inc. (hereinafter M & I), whereby the M & I employee agreed to apply for a permit with the New York City Department of Buildings (hereinafter DOB) on behalf of Raglan. A DOB permit was issued to M & I on September 8, 2016, with respect to the subject property. However, after Red Oak was terminated, Elmar's principal began coordinating the schedules of the different trades.
In April 2017, the injured plaintiff, and his wife suing derivatively, commenced this action against Raglan, Red Oak, and M & I, inter alia, asserting causes of action alleging violations of Labor Law §§ 240(1), 241(6), and 200, and common-law negligence. M & I moved, among other things, for summary judgment dismissing the complaint insofar as asserted against it. In part, M & I [*2]argued that it was entitled to judgment as a matter of law on the basis that, prior to the commencement of this action, the injured plaintiff executed a release in favor of M & I for all claims arising out of the subject accident. In an order dated June 21, 2019, the Supreme Court, inter alia, denied M & I's motion. M & I appeals.
"Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [internal quotation marks omitted]; see Matter of Cheng Ching Wang, 114 AD3d 939, 940). "A release is a contract, and its construction is governed by contract law" (Kaminsky v Gamache, 298 AD2d 361, 361; see Carew v Baker, 175 AD3d 1379, 1380). "Where . . . the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties" (Booth v 3669 Delaware, 92 NY2d 934, 935, quoting Mangini v McClurg, 24 NY2d 556, 563).
"A release may be invalidated, however, for any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276 [internal quotation marks omitted]; see Matter of Cheng Ching Wang, 114 AD3d at 941). "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release'" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276, quoting Fleming v Ponziani, 24 NY2d 105, 111).
Here, M & I established its prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against it by demonstrating that the injured plaintiff released M & I from any claims made by the injured plaintiff, inter alia, with regard to the accident (see Beys Specialty, Inc. v Euro Constr. Servs., Inc., 125 AD3d 911, 912; Matter of Cheng Ching Wang, 114 AD3d at 941). In support of its motion, M & I submitted, among other things, a copy of the release executed by the injured plaintiff before a notary public on December 30, 2016, which clearly and unambiguously stated that he was releasing M & I from, inter alia, all actions, causes of action, and suits. M & I also submitted the transcripts of the deposition testimony of the injured plaintiff and Ivan Kopychak, one of M & I's principals. The injured plaintiff testified that in December 2016, Kopychak and two other people came to the injured plaintiff's home to discuss the accident. Before the injured plaintiff, who does not speak or read English, signed the release, they explained to him in Ukrainian that the release stated that he did not have any claims against Kopychak. After having that conversation, the injured plaintiff agreed to sign the document. Kopychak testified that, after the injured plaintiff stated that he did not have any complaints against Kopychak, his partner, and M & I, the notary public translated the release for the injured plaintiff before he signed it.
In opposition, the injured plaintiff failed to raise a triable issue of fact as to whether there had been fraud, duress, or some other fact which would be sufficient to void the release (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276; Romero v Khanijou, 212 AD2d 769, 769-770). A person who does not understand the English language is not automatically excused from complying with the terms of a signed agreement, since such person must make a reasonable effort to have the agreement made clear to him or her (see Pimpinello v Swift & Co., 253 NY 159, 163-164; Shklovskiy v Khan, 273 AD2d 371, 372; Sofio v Hughes, 162 AD2d 518, 519). Here, the deposition testimony of the injured plaintiff and Kopychak demonstrates that the terms of the release were explained to the injured plaintiff before he executed the document (see e.g. Kenol v Nelson, 181 AD2d 863, 865-866). Furthermore, contrary to the plaintiffs' contention, the Supreme Court erred in determining that CPLR 2101(b) precluded consideration of the release. That statute provides that papers to be "served or filed shall be in the English language" and "[w]here an affidavit or exhibit annexed to a paper served or filed is in a foreign language, it shall be accompanied by an English translation and an affidavit by the translator stating his qualifications and that the translation is accurate" (CPLR 2101[b]). Here, the release was written in English.
We need not reach the parties' remaining contentions in light of our determination.
RIVERA, J.P., AUSTIN, DUFFY and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court