DiDomenico v McWhorter (2024 NY Slip Op 02634)

DiDomenico v McWhorter

2024 NY Slip Op 02634

Decided on May 10, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 10, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, BANNISTER, GREENWOOD, AND KEANE, JJ.

304 CA 23-01291

[*1]GABRIELLE J. DIDOMENICO, PLAINTIFF-APPELLANT,
v
JACOB D. MCWHORTER, DEFENDANT-RESPONDENT. 

MCMAHON KUBLICK, P.C., SYRACUSE (W. ROBERT TAYLOR OF COUNSEL), FOR PLAINTIFF-APPELLANT.
LAW OFFICE OF KEITH D. MILLER, LIVERPOOL (KEITH D. MILLER OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from an order of the Supreme Court, Onondaga County (Joseph E. Lamendola, J.), dated January 26, 2023. The order granted the motion of defendant for summary judgment dismissing the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the complaint is reinstated.
Memorandum: Plaintiff commenced this action seeking damages for injuries she sustained when the vehicle in which she was a passenger was struck in an intersection by a vehicle operated by defendant. Supreme Court granted defendant's motion for summary judgment dismissing the complaint on the ground that a release signed by plaintiff after the motor vehicle accident barred her action against him. Plaintiff contends on appeal that the court erred in granting the motion because there is an issue of fact whether the release was the result of mutual mistake. We agree.
"Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release . . . If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks omitted]). "A release 'should never be converted into a starting point for . . . litigation except under circumstances and under rules which would render any other result a grave injustice' " (id., quoting Mangini v McClurg, 24 NY2d 556, 563 [1969]). Thus, "[a] release may be invalidated . . . for any of 'the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake' " (id., quoting Mangini, 24 NY2d at 563). "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release' " (id., quoting Fleming v Ponziani, 24 NY2d 105, 111 [1969]).
"[W]here, as here, the release is challenged on the ground of mutual mistake, the party challenging it 'must sustain the [ultimate] burden of persuasion if [that party] is to establish that the general language of the release, valid on its face and properly executed, is to be limited because of a mutual mistake, or otherwise does not represent the intent of the parties' " (Pressley v Rochester City School Dist., 234 AD2d 998, 998 [4th Dept 1996], quoting Mangini, 24 NY2d at 563; see 2B PJI3d 4:11 at 213-214, 220-221 [2023]). "[I]n resolving claims of mutual mistake as to injury at the time of release, there has been delineated a sharp distinction between injuries unknown to the parties and mistake as to the consequence of a known injury" (Mangini, 24 NY2d at 564; see Schroeder v Connelly, 46 AD3d 1439, 1440 [4th Dept 2007]). "A mistaken belief as to the nonexistence of presently existing injury is a prerequisite to avoidance of a release" (Mangini, 24 NY2d at 564; see Schroeder, 46 AD3d at 1440). By contrast, "[i]f the injury is known, and the mistake . . . is merely as to the consequence, future course, or sequelae [*2]of [the] known injury, then the release will stand" (Mangini, 24 NY2d at 564). "Even where a releasor has knowledge of the causative trauma, . . . there must be actual knowledge of the injury. Knowledge of injury to an area of the body cannot cover injury of a different type and gravity" (id. at 565; see Schroeder, 46 AD3d at 1440; O'Neal v Life Science Labs., Inc., 23 AD3d 1024, 1024-1025 [4th Dept 2005]).
Here, it is uncontested that defendant met his initial burden of establishing that he had been released from the claims against him by submitting the executed release in support of his motion (see Bronson v Hansel, 16 NY3d 850, 851 [2011]; Himmelsbach v George, 70 AD3d 1461, 1461-1462 [4th Dept 2010], lv denied 15 NY3d 705 [2010]). Nonetheless, viewing the evidentiary submissions in the light most favorable to plaintiff as the nonmoving party (see Matter of New York City Asbestos Litig., 33 NY3d 20, 25-26 [2019]), we agree with plaintiff that she raised an issue of fact whether the release was the result of mutual mistake (see Mangini, 24 NY2d at 560, 565-566; Schroeder, 46 AD3d at 1440-1441; O'Neal, 23 AD3d at 1024-1025; Paige v City of Buffalo, 300 AD2d 1001, 1002 [4th Dept 2002]).
The submissions establish that, beginning days after the accident and during an approximately two-week period prior to signing the release, plaintiff had four appointments with her chiropractor during which she complained of symptoms including problems with sleeping, fatigue, ringing in the ears, anxiety, stiffness in the neck, fullness in the head and neck, headaches, pain in the mid- and low-back, and neck pain. Following the collection of such subjective complaints and performance of a battery of objective tests, the chiropractor rendered diagnoses of whiplash, cervicalgia, and segmental and somatic dysfunction of the cervical, thoracic, and lumbar regions, and the chiropractor opined that plaintiff had a favorable prognosis. However, "[t]he favorable prognosis of recovery was apparently made on th[e] erroneous assumption" that plaintiff's pain and other symptoms were attributable to the diagnosed neck and back injuries (Mangini, 24 NY2d at 565). While the chiropractor made a single passing reference in the medical record of the first visit that plaintiff presented with a concussion, the diagnosis and treatment of a concussion is outside the scope of professional practice for a chiropractor, and the chiropractor neither referenced a concussion in the medical records of the three additional visits conducted before plaintiff signed the release nor referred plaintiff to an appropriate medical provider for such a condition (see Education Law § 6551 [1]; NY St Educ Dept, Off of the Professions, Practice Alerts for Chiropractic—Practice of Treating Concussion).
Moreover, the medical records submitted by plaintiff indicate that, even after she signed the release, medical professionals remained unsure whether she had sustained a concussion in the accident. Specifically, after plaintiff presented at a hospital emergency department with increased head pain and nausea nine days after she signed the release and underwent evaluation and testing, the medical provider at the hospital opined that it was "possible" that plaintiff was suffering from "a postconcussive type syndrome," but that it remained "not quite clear" whether such a diagnosis was warranted. At the recommendation of the medical provider at the hospital, plaintiff subsequently followed up with a neurologist and, two weeks after plaintiff had signed the release, plaintiff was diagnosed for the first time with postconcussion syndrome (see Schroeder, 46 AD3d at 1440). Later treatment at a concussion clinic confirmed that plaintiff had sustained a mild traumatic brain injury at the time of the accident.
Consequently, inasmuch as the submissions indicate that plaintiff had been diagnosed with neck and back injuries only at the time she signed the release and that plaintiff's symptoms were not medically attributed to postconcussive syndrome until after the execution of the release with additional uncertainty in the interim, we conclude that plaintiff raised an issue of fact whether, at the time the release was executed, the parties were under "[a] mistaken belief as to the nonexistence of [a] presently existing injury," i.e., a traumatic brain injury (Mangini, 24 NY2d at 564; see Schroeder, 46 AD3d at 1440-1441; O'Neal, 23 AD3d at 1024-1025; Paige, 300 AD2d at 1002; cf. Himmelsbach, 70 AD3d at 1462). We therefore reverse the order, deny the motion, and reinstate the complaint.
Entered: May 10, 2024
Ann Dillon Flynn
Clerk of the Court